UNITED STATES of America,
Plaintiff–Appellee,

v.

Alfred JORDAN, Defendant–Appellant.

No. 89–1774.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 22, 1989.

Decided Dec. 7, 1989.

R. Jeffrey Wagner, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Nikola Kostich (argued), Milwaukee, Wis., for defendant-appellant.

Before CUMMINGS, COFFEY and KANNE, Circuit Judges.

CUMMINGS, Circuit Judge.

Alfred M. Jordan appeals three determinations made by the district court in sentencing him under the Sentencing Reform Act of 1984 to 10 years in prison for possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Jordan objects to the district court's decisions to: (1) enhance the sentence for obstruction of justice pursuant to Section 3C1.1 of the United States Sentencing Commission Guidelines (the "Guidelines") on the basis of a finding that Jordan lied to his probation officer about his use of cocaine while awaiting sentencing in this case; (2) reject Jordan's request to reduce the sentence for Acceptance of Responsibility pursuant to Guidelines § 3E1.1 on the basis of a finding that Jordan, again while awaiting sentencing in this case, continued to deal in cocaine; and (3) depart upward from the sentence dictated by the Guidelines for a combination of reasons. We conclude that the district court was not clearly in error in its factual determinations or incorrect in applying the Guidelines with regard to the first two decisions, and that the departure was reasonable on the grounds articulated by the district court. Therefore, we affirm the sentence of the district court.

## BACKGROUND

The events that resulted in Jordan's indictment and conviction occurred during the course of one day. Jordan persisted in criminal conduct as his case proceeded through the criminal justice system, however, and that conduct significantly affected the sentence of confinement ordered by the district court.

On August 3, 1988, a confidential informant for Wisconsin's Division of Criminal Investigation in Milwaukee telephoned Raymond Donaldson and they discussed a sale of cocaine to the informant. That afternoon, the informant met Donaldson and Jordan at Donaldson's residence, where Donaldson and Jordan agreed to sell the informant four ounces of cocaine. Jordan would later testify that he had obtained the cocaine for the deal. Transcript

of Change of Plea, October 31, 1988, at 15–16.

Jordan and Donaldson left the house, but were confronted by state and federal agents as they entered a car Jordan was using. Donaldson surrendered, was arrested, and became Jordan's co-defendant in the criminal case that followed.[1] Jordan, on the other hand, fled after struggling with an agent and breaking free. While running from the car, he threw a paper bag containing four one-ounce packages of cocaine into the air. As the chase continued, Jordan slammed shut a fence gate, tripping an agent of the Internal Revenue Service's Criminal Investigation Division and causing the agent to dislocate a finger. Surgery to the agent's hand was required. Jordan was captured and arrested after he was discovered underneath the porch of a nearby residence.

Jordan and Donaldson were indicted by a federal grand jury for the Eastern District of Wisconsin of the following: Count I, conspiracy to distribute cocaine in violation of 21 U.S.C. § 841(a)(1); Count II, possession with intent to distribute four ounces (113.4 grams) of cocaine, also in violation of 21 U.S.C. § 841(a)(1). Jordan was also charged with a third count, assault on a law enforcement officer engaged in performance of his official duties, in violation of 18 U.S.C. § 111. The grand jury also sought forfeiture of the car Jordan was using at the time of his arrest as an instrumentality of the crimes.

Jordan pleaded guilty to Count II of the indictment pursuant to an agreement with the government under which Counts I and III were dropped. He agreed as part of that written plea agreement to forfeit any interest he might have in the car. He was released on a $100,000 bond secured by property.

On December 22, 1988, while he awaited sentencing, Jordan submitted to a urinalysis test by the United States Probation Office. The test yielded a positive result for the presence of cocaine on February 6, 1989. When his probation officer told him of the positive result the next day, Jordan denied using any illegal drugs.

In the meantime, on January 6, 1989, Milwaukee police had stopped a vehicle in front of a known drug house. Inside the car were Jordan, then 33 years old, and a 17–year–old male. Jordan had in his possession a plastic bag containing $3,983 in cash, a beeper, and approximately 7.5 grams of marijuana. The juvenile carried a plastic bag filled with 101 paper packages containing a total of approximately 19 grams of cocaine. Then, on February 8, 1989, a similar scenario was played out. A car containing Jordan and a 14–year–old was stopped by Milwaukee police in the same area. This time, Jordan had a plastic bag in the glove compartment containing $1,617 in cash and cocaine residue. Jordan did not contest the police accounts of these two arrests at his sentencing hearings, nor did he attempt to give those facts innocent explanations. After these incidents were brought to the attention of the district court, Jordan's bail was revoked.[2]

## SENTENCING

Federal probation officers assigned to the case initially recommended a "total offense level," the score net of applicable adjustments, of 32 under the Guidelines. At the other axis of the Sentencing Table, Jordan's Criminal History Category was determined to be VI, the maximum level.[3]

---

1. Donaldson's case is unrelated to this appeal.

2. Also before the sentencing court in this case were the following incidents reported in Jordan's record: on May 17, 1988, before his arrest in the present case, Jordan was arrested in Milwaukee and charged with possession of marijuana and driving on a revoked license; authorities recorded five other separate cases against Jordan for driving after license revocation. All of these offenses were apparently pending at the time of sentencing in this case.

3. Jordan had an extensive record, but it did not include any drug offenses. He was convicted of robbery in 1974, theft in 1977, and burglary in 1984. In addition to those felonies, he was convicted of bail jumping in 1974 and escape in 1980, 1982, and again in 1986. This history left him with a subtotal criminal score of 14 points. To this two points were added because he committed the present offense less than two years after release from imprisonment on a sentence of more than one year and one month. The

This translated into a sentencing range of imprisonment of 210–262 months, in part because probation officials placed Jordan in the career offender category, pursuant to Guidelines §§ 4B1.1 and 4B1.2.[4] After hearing extensive testimony on a range of sentencing and factual issues,[5] the district court determined at the final sentencing hearing on April 3, 1989 that no two of Jordan's prior convictions were crimes of violence and therefore he could not be sentenced as a career criminal under the Guidelines. That decision left Jordan with a "base offense level," before adjustments, of 18, with his Criminal History Category level remaining at VI.

The court then added two levels for obstruction of justice under Guidelines § 3C1.1. The court based this enhancement on Jordan's denial of cocaine use even after he was confronted with the positive test results.

As his next step toward fixing a total offense level, the district judge declined to grant Jordan's request for a two-level reduction for Acceptance of Responsibility under Guidelines § 3E1.1. The district court based that decision on the two incidents of drug-related activity during the presentence period. The district court acknowledged Jordan's plea and accompanying admission of responsibility for the possession with intent to distribute. Nevertheless, the court was persuaded that "this is one of those cases where the old adage actions speak louder than words certainly comes into play." Transcript of Sentencing Continuation, April 3, 1989 (hereinafter "Tr.") at 76.

Those two decisions left Jordan with a total offense level of 20. This would dictate a range of imprisonment of 70–87 months at his Criminal History Category. See Sentencing Table, United States Sentencing Commission, *Guidelines Manual*, at 5.2 (Nov.1989) (hereinafter *Manual*). The government urged an upward departure to 180 months, or 15 years, based on the provision in the Guidelines that the court may depart from the sentencing schedule when, but only when, it finds "an aggravating or mitigating circumstance ... that was not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b). The Probation Office stated in a report to the district court that upward departure "might be considered" because of Jordan's flight from arrest and the injury to the federal agent and also because the two new arrests had not been counted as past criminal conduct in computing Jordan's criminal history category. Addendum to presentence investigation report, Defendant's Br., at 3.

The district court decided to depart upward, but not so far as the government urged and far below the statutory maximum of 20 years in prison and a fine of $1 million. The court sentenced Jordan to serve 120 months and also fined Jordan $2,500.[6] The court based its decision to boost the sentence by 33 months above the maximum end of the Guidelines range on the following factors: (1) Jordan's attempt to flee from the agents during the original drug-dealing incident, resulting in injury to one of the agents; (2) the two incidents of criminal activity while Jordan was awaiting

---

highest level of criminal history categories is defined as 13 or more points.

**4.** Section 4B1.1 provides in relevant part:
A defendant is a career offender if ... (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense....
Section 4B1.2 defines the terms used in the quoted Section. See *United States v. Belton*, 890 F.2d 9 (7th Cir.1989).

**5.** The record reflects that Judge Stadtmueller scheduled at least five sentencing hearings,

three of which developed into substantive inquiries, and the record suggests that he gave considerable attention to each of the defendant's objections.

**6.** The fine represented a downward departure from the Guidelines, which the government has not appealed.

The district court also sentenced Jordan to five years of supervised release upon his release from prison, the first 120 days of which are to be spent in a community treatment center, enrollment in a substance abuse program, and assessment of a $50 fine.

sentencing; (3) Jordan's abuse of cocaine while awaiting sentencing; and (4) Jordan's criminal record "as a whole." Tr. at 88–90.

This timely appeal followed entry of the court's sentencing judgment.[7]

## I.

### Standards of Review

**A.** *Questions of Fact and Application*

We review a district court's factual findings in determining an appropriate criminal sentence for clear error. 18 U.S.C. § 3742(e); *United States v. Herrera,* 878 F.2d 997, 999–1000 (7th Cir.1989). Whether Jordan obstructed justice within the meaning of Guidelines § 3C1.1 and whether he accepted responsibility within the meaning of Guidelines § 3E1.1 were essentially questions of fact for the district court to resolve from a variety of sources. The commentary to Section 3E1.1 in particular instructs a court of appeals to be especially deferential in reviewing a finding that a defendant has not accepted responsibility because "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on re-

view and should not be disturbed unless it is without foundation." Application Note 5, *Manual* at 3.24.

 Because the district court works within the limits imposed by the Guidelines, however, a reviewing court must determine whether the district court correctly applied those provisions, a question of statutory construction to be reviewed under what may be a somewhat less deferential standard, as suggested by 18 U.S.C. § 3742(e)(2).[8] The result is that we will affirm the district court if it correctly applied the Guidelines to findings of facts that do not leave us " 'with the definite and firm conviction that a mistake has been committed.' " *Herrera,* 878 F.2d at 1000 (citations omitted).

**B.** *Departure*

We review a district court's decision to depart from the Guidelines sentencing range to determine whether it was reasonable in light of the factors dictated by the Guidelines and the district court's explanations for its departure. 18 U.S.C. § 3742(e)(3); *United States v. Missick,* 875 F.2d 1294, 1300–1301 (7th Cir.1989); *United States v. Miller,* 874 F.2d 466, 471 (7th Cir.1989).[9] As this Court stated in *Miller:*

---

7. Defendant failed to comply with Seventh Circuit Rule 30(a), (b), or (c), thereby creating a deficient record for review. See *United States v. White* and *United States v. Roe,* 888 F.2d 490 (7th Cir.1989). Briefs must contain complete summaries of the reasons delivered by sentencing courts for their decisions. We do not penalize the defendant for this omission, but repeat that such omissions may be adequate grounds for summary affirmance. *Id.*

8. Congress amended 18 U.S.C. § 3742(d) in 1988 to require appellate courts to give "due deference to the district court's application of the guidelines to the facts." Anti–Drug Abuse Act of 1988, Pub.L. 100–690. Though it has been suggested that appellate courts should as a result use a "clearly erroneous" standard to review applications of the Guidelines, see, *e.g., United States v. Wright,* 873 F.2d 437, 443–444 (1st Cir.1989), the legislative history of the adoption of the "due deference" standard indicates that a sliding scale is appropriate:

This standard is intended to give the court[s] of appeals flexibility in reviewing an application of a guideline standard that involves some subjectivity. The deference due a dis-

trict court's determination will depend upon the relationship of the facts found to the guidelines standard being applied. If the particular determination involved closely resembles a finding of fact, the court of appeals would apply a clearly erroneous test. As the determination approaches a purely legal determination, however, the court of appeals would review the determination more closely. 134 Cong.Rec. H11257 (daily ed. Oct. 21, 1988).

The present case does not call for a precise determination of this standard, however, because the district court's application of the Guidelines in the present case meets a standard well above the "clearly erroneous" measure.

9. The First and Sixth Circuits have followed a three-step process. *United States v. Diaz–Villafane,* 874 F.2d 43, 49–50 (1st Cir.1989); *United States v. Rodriguez,* 882 F.2d 1059, 1067 (6th Cir.1989); *United States v. Joan,* 883 F.2d 491, 494 (6th Cir.1989). The Second and Fifth Circuits appear to use a more simply stated requirement that the district court offer acceptable reasons for a reasonable departure. See *United States v. Sturgis,* 869 F.2d 54, 57 (2d

" 'Reasonableness' implies that a sentencing judge must provide articulable reasons, of a type contemplated by the Act and the Guidelines, and based on a sufficiently sound factual foundation, to justify a departure from the guidelines." 874 F.2d at 471.

■ In addition, we agree with the Second, Fifth, and Sixth Circuits that the Sentencing Commission did not intend to deprive district courts of "sensible flexibility" in deciding to depart from the Guidelines. See, e.g., United States v. Sturgis, 869 F.2d 54, 56–57 (2d Cir.1989); United States v. Rodriguez, 882 F.2d 1059, 1068 (6th Cir. 1989); United States v. Roberson, 872 F.2d 597, 601, 602 n. 4 (5th Cir.1989).

## II.

### Analysis

A. *Enhancement for Obstruction of Justice*

■ Under Guidelines § 3C1.1, the district court is to increase the base offense level by two if the defendant "willfully impeded or obstructed, or attempted to impede or obstruct[,] the administration of justice during the investigation or prosecution of the instant offense." The application notes list examples suggestive of behavior that would call for the adjustment, including "testifying untruthfully or suborning untruthful testimony concerning a material fact ...; [and] furnishing material falsehoods to a probation officer in the course of a presentence or other investigation of the court." Application Note 1(c), (e). The Commentary to Section 3C1.1 explains that sentences should be increased in those cases in which a defendant "engages in conduct calculated to mislead or deceive authorities or those involved in a judicial proceeding, or otherwise to willfully interfere with the disposition of criminal charges, in respect to the instant offense."

On the basis of the positive test for cocaine and Jordan's denial that he had used cocaine while he awaited sentencing in this case, the trial court concluded that Jordan had lied about his drug use to the probation officer. Jordan does not base his appeal on

the validity of the drug test per se or its use by the probation office. Instead, Jordan maintains that his denial could not be considered a "material falsehood" of the sort that the Sentencing Commission intended to punish under Guidelines § 3C1.1.

The district court did not clearly err in finding that Jordan's continued drug use while out on bail for a drug-related conviction was material to the disposition of his case, and therefore that his lie about that conduct was a material falsehood. Jordan's drug abuse during the pendency of his drug-dealing prosecution was directly relevant to both the Probation Office and the district court in determining how Jordan's case should be handled. Monitoring the behavior of convicted defendants is an integral and critical function of the Probation Office and of the courts in criminal case management. Such monitoring is particularly important in cases involving defendants with criminal records who have pleaded guilty to drug dealing. The importance of monitoring is buttressed by the very fact that the Probation Office takes urine specimens from defendants in Jordan's position.

We infer that the district court found that Jordan was trying to obstruct investigation of his drug-related activities as a whole, a finding bolstered by the two incidents of drug dealing that followed his plea and the urinalysis test. Jordan willfully attempted to hinder the prosecution and disposition of his case. A false statement about drug use during the sentencing stage of criminal court proceedings could thus be seen as constituting "obstruction of justice during ... prosecution" of the case against Jordan. See United States v. Mata–Grullon, 887 F.2d 23, 24 (3d Cir.1989) (per curiam) (dicta) (nothing improper in such adjustment where defendant lied about his name, birth date, and citizenship to immigration agent and federal magistrate).

B. *Rejection of Acceptance of Responsibility*

■ Guidelines § 3E1.1 provides that:
(a) If the defendant clearly demonstrates a recognition and affirmative acceptance

Cir.1989); *United States v. Velasquez–Mercado,* 872 F.2d 632, 637 (5th Cir.1989).

of personal responsibility for his criminal conduct, reduce the offense level by 2 levels.[10]

. . . . .

(c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.

In determining whether a defendant qualifies for an acceptance of responsibility adjustment, consideration may be given to "voluntary termination or withdrawal from criminal conduct or associations." Application Note 1(a). In addition, Application Note 4 states that acceptance of responsibility is "ordinarily" not warranted where a defendant's sentence is being enhanced pursuant to Guidelines § 3C1.1, as Jordan's is here.[11]

The district court rejected Jordan's request for "remorse points" on the basis of Jordan's undisputed participation in what appeared to be two separate incidents of drug dealing involving minors while he awaited sentencing. There was no factual dispute regarding these incidents. The district judge exercised his discretion properly in finding that a defendant who took advantage of his status as a convicted drug dealer free on bond to pursue drug trafficking in the company of minors has not accepted responsibility for the criminal behavior for which he was convicted. Jordan does little more than point to his guilty plea to a single count of his three-count indictment as evidence of his acceptance of responsibility. The Sentencing Commission went out of its way in subsection 3E1.1(c) to suggest that a plea alone does not justify leniency; a district court may expect more than Jordan has provided in the way of visible acceptance of responsibility. Just as it is difficult to credit Jordan with acceptance of responsibility in light of his continued drug dealing, it is also hard to see how his use of cocaine while awaiting

sentencing for dealing in that drug is consistent with acceptance of responsibility for that crime.

### C. Upward Departure

The sentencing court is not generally allowed to depart from a prescribed guidelines sentence on the basis of circumstances adequately taken into consideration by the Sentencing Commission. 18 U.S.C. § 3553(b). The Sentencing Commission nonetheless decided to allow for departures for two primary reasons. First, the Commission recognized the difficulty of establishing within one set of categories and commentaries, particularly the first such set, a system that would adequately address "the vast range of human conduct potentially relevant to a sentencing decision." Policy Statements, *Manual* at 1.6. Second, the Commission trusted sentencing courts to save their authority to depart for the truly atypical case. "[T]hey will not do so very often." *Id.* at 1.7.

Thus if the Guidelines simply do not capture circumstances of a case which the district court determines are relevant to a proper sentence or if the circumstances are sufficiently unusual, the district court may in its discretion factor those circumstances into his or her sentencing decision. Guidelines Policy Statement § 5K2.0, *Manual* at 5.42. Such occasional departures do not defeat the purpose of the Guidelines, which is to "carve out a 'heartland,' a set of typical cases," against which each individual case must be measured. See Policy Statement 4(b), *Manual* at 1.6.

■ A district court may consider departure only after it has already computed the total offense level and criminal history category according to the Guidelines, as the court did here with painstaking care during the course of three hearings spread over a month's time. At that point, when the

---

**10.** This provision was amended effective January 15, 1988, by substituting the phrase "his criminal conduct" for the phrase "the offense of conviction" to clarify the intent of the Sentencing Commission. *Manual* at C.22.

**11.** This commentary was amended effective November 1, 1989, to delete the statement that

Acceptance of Responsibility points are "not warranted" for defendants to whom § 3C1.1 applies. *Manual* at C.135. The district court in this case was guided by the older language, but did not base its decision to deny "remorse points" on that commentary.

court is determining whether departure is warranted, "the court may consider, without limitation, any information concerning the background, character, and conduct of the defendant, unless otherwise prohibited by law." Guidelines § 1B1.4 (citing 18 U.S.C. § 3661); see also *United States v. de la Cruz*, 870 F.2d 1192, 1196 (7th Cir. 1989). Thus, as the commentary of the Guidelines notes, "[t]he range of information that may be considered at sentencing is broader than the range of information upon which the applicable sentencing range is determined." Background to Commentary of § 1B1.3, *Manual* at 1.20.

Judge Stadtmueller explained his decision to depart beyond the sentence dictated by the Guidelines grid in open court in accordance with 18 U.S.C. § 3553(c) and provided specific reasons for the departure in accordance with 18 U.S.C. § 3553(c)(2). He stated that Jordan's was not a prototypical case falling within the "heartland" of such drug-dealing cases:

> This is not a simple possession case in any sense of the word. The facts belie that. The facts speak out loud and clear that even once charged the defendant was found to have cocaine present in his body systems and involved juveniles in the further trafficking of cocaine.
>
> And those facts as well as the defendant's record as a whole, coupled with the matter of the apprehension of the defendant on the occasion of his arrest for the offense with which he presently stands charged and convicted of, in the view of the court cry out for a sentence that goes a bit beyond that called for under the guidelines.
>
> Tr. at 89–90.

Jordan objects that the district court: (1) did not inform him in advance that the court would be departing from the Guidelines range; (2) was not sufficiently specific in its statement explaining the decision to depart, thus violating the requirement that sentencing courts justify departure; (3) based its departure in part on offenses to which Jordan did not plead guilty; and (4) subjected Jordan to "double punishment" by relying on factors that already counted against him under the Guidelines. Keeping in mind the "reasonableness" standard cited above, we consider each objection in turn, treating the third objection as a subset of the second objection.

### 1. *Notice*

■ This objection is defeated by logic, the guidelines themselves, and the record in this case. First, the district court cannot announce what the court plans to order in advance of a hearing called for the purpose of soliciting testimony, weighing evidence, and reaching a final sentencing decision. A defendant and his or her defense counsel come to the final sentencing hearing prepared to seek the most favorable sentence possible, having been informed of the probation officer's recommendations. See Fed.R.Crim.P. 32(a)(1).[12] As long as they are not unfairly surprised with new evidence or information, the court is free to announce its sentence in compliance with the Guidelines and other applicable law.

Second, the Sentencing Commission stated that "[t]he controlling decision as to whether and to what extent departure is warranted can only be made by the court *at the time of sentencing.*" § 5K2.0, *Manual* at 5.42 (emphasis added). This statement anticipates a "sentencing moment" during which the court makes a final determination about departure. That moment most logically falls at the close of a final hearing.

Finally, the district court gave Jordan innumerable opportunities to address the calculation of the sentence and the circumstances of the case, well in excess of any requirement of the Guidelines or due process. See *United States v. Agyemang*, 876 F.2d 1264, 1270 (7th Cir.1989) (government need not tell defendant whom it plans to call to testify, what evidence it plans to present, or even whether it plans to present evidence at sentencing hearing). That fact

---

**12.** Jordan does not claim a Rule 32(a)(1) or (c)(3)(A) violation on the ground that the district court failed to determine or address whether he and his counsel had the opportunity to read and discuss the presentence investigation report.

distinguishes this case from *United States v. Palta*, 880 F.2d 636, 640 (2nd Cir.1989), in which the court determined that the defendant was not given an adequate opportunity to be heard regarding departure from the Guidelines. If Jordan and his counsel harbored any false sense of security at the time of sentencing it was in spite of the record developed to that date, not because of it. See Tr. at 55–56 (Jordan's counsel referring to departure and "possible departure").

### 2. *Specificity and Reasonability*

The sentencing court must state "the specified reason for imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c). The district court explained that Jordan's case was extraordinary because he had continued to use and deal in cocaine while awaiting sentencing on a cocaine conviction, because he fled from the scene of his initial arrest, causing injury to a federal agent, and because he took these actions despite the fact that he had already compiled what should have been a sobering criminal record. The record reflects that Jordan and his counsel had ample opportunities before and during the final sentencing hearing to challenge and probe all of those findings. We take each of the district court's justifications for departure in turn, considering jointly Jordan's cocaine use and drug dealing while awaiting sentence.

a. *Attempt to Flee Arrest and Assault on Officer.* —As part of the plea agreement, the government dropped Count III of the indictment, charging Jordan with assaulting the federal agent during his flight from arrest on August 3, 1988. Jordan did not contest the government's description of his flight and the injury to the federal agent, but only denied that Jordan intended to injure the agent and that therefore the injury was "self-inflicted." Defendant's Br. at 10.

■ The fact that the government decided not to pursue prosecution on a count returned by the grand jury as part of a plea agreement does not in itself preclude the district court from considering the facts involving that count as an aggravating circumstance "of a kind ... that was not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines." 18 U.S.C. § 3553(b). Just as a defendant who engages in a high-speed car chase while violating an unrelated federal law may justifiably receive an enhanced sentence for violating the federal law, see *United States v. Ramirez–De-Rosas*, 873 F.2d 1177 (9th Cir.1989), so too a defendant who flees federal and state agents and causes serious injury to one of them may be sentenced more harshly. Such conduct is not part and parcel of possessing cocaine with the intent to distribute it. It was within the discretion of the district court to consider the harm inherent in Jordan's flight from and struggle with armed agents, including the potential for even more serious injury to authorities and bystanders than occurred in this case. It was also of course within the authority of the district court to determine that the injury was not "self-inflicted."

■ b. *Use of Cocaine and Drug Dealing While Awaiting Sentence.*—The charges arising out of the two arrests that occurred while Jordan was awaiting sentencing were still pending at the time of sentencing in this case. The record does not reflect any attempt to prosecute Jordan for illegal drug use in connection with the positive drug test. Regardless of the disposition of the state charges and the potential criminal liability for the drug use, however, Jordan was already in the highest criminal history category for purposes of sentencing in the present case. That fact distinguishes this case from those in which a sentencing court attempts to disregard the Guidelines based on a finding that the defendant's criminal history score inadequately accounts for past conduct, despite the fact that the court could adjust for the inadequacy by increasing the criminal history category one or more levels. *Miller*, 874 F.2d 466; see *Taylor v. United States*, — U.S. ——, 110 S.Ct. 265, 107 L.Ed.2d 215 (1989) (Stevens, J., concurring with denial of certiorari).

According to the Guidelines Policy Statement regarding the adequacy of the criminal history category, departure is permissible where:

> [R]eliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes,.... Such information may include, but is not limited to, information concerning:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (e) prior similar adult conduct not resulting in criminal conviction.

§ 4A1.3.

The sentencing judge need not "incant the specific language used in the guidelines." *United States v. De Luna–Trujillo*, 868 F.2d 122, 124 (5th Cir.1989) (discussing departure based on Guidelines § 4A1.3). Strongly implicit in the district court's explanations of the departure was a finding that Jordan—who dealt in cocaine, abused cocaine, and then lied about his use when confronted with solid evidence to the contrary, all while awaiting sentencing in a cocaine-dealing case—clearly exhibited a propensity to commit future crimes. The federal prosecutor described Jordan during the final sentencing hearing as "completely incorrigible." Tr. at 85. In explanatory remarks before pronouncing sentence, the district court stated, "Clearly we have an individual who has not in any sense of the word seen the error of his ways when it comes to drug dealing and involvement in it." Tr. at 89.

The circumstances of Jordan's two presentencing arrests, together with his drug use, are uncontested and provide "reliable information" supporting a finding by the district court that the use of a Category VI criminal history in Jordan's case did not adequately reflect "the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." See *United States v. Diaz–Villafane*, 874 F.2d 43, 50 (1st Cir.1989). There were clear indications in the two arrests that Jordan was not simply consuming illegal drugs, but was in fact trafficking in them. The district court made a reasonable decision in finding that such activities bespeak a potential for future criminal conduct far beyond the factors that went into reaching Jordan's total offense level and criminal history category.

c. *Criminal Record.*—Had the district court in this case not probed Jordan's criminal record in great detail during the series of hearings held in this case—largely to settle the career offender question not at issue in this appeal—the district court's reference to Jordan's record as a grounds for departure would be more troubling. See, *e.g.*, *United States v. Wells*, 878 F.2d 1232, 1233 (9th Cir.1989) (Guidelines not satisfied by general recitation that defendant's criminal history category or offense level underrepresents defendant's criminal record); *United States v. Michel*, 876 F.2d 784 (9th Cir.1989) (same). In determining whether Jordan qualified as a career offender, however, the court had an opportunity to review and discuss his record in some detail. The district court did not simply rely upon the prior arrest record, which is discouraged by the Guidelines. § 4A1.3, *Manual* at 4.9 ("[A] prior arrest record itself shall not be considered under § 4A1.3."). Instead, it found that Jordan both before and after his arrest in this case generated a record of criminal behavior that was not captured by the highest category of criminal history. That finding was not clearly erroneous.

Finally, Jordan suggests that a departure of "well over 50% of the lower end of the range," in fact 71 percent, was unreasonable. Br. at 10. The degree of departure must be reasonable. 18 U.S.C. § 3742(e)(3); *United States v. Ryan*, 866 F.2d 604, 610 (3d Cir.1989). The facts supporting the district judge's decision to depart from the sentence dictated by the Guidelines also support his decision to make the departure substantial. It does not appear unreasonable.

3. *"Double Punishment"*

Finally, Jordan argues that the district court impermissibly relied on the same factors more than once in its various ad-

justments to the base offense level and in arriving at its decision to depart from the Guidelines. These claims misstate the district court's grounds for his various decisions and also misconstrue the Guidelines.

■ A factor listed as an adjustment or as a specific offense characteristic within the Guidelines may still provide grounds for departure "if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate." Policy Statement, § 5K2.0. Moreover, a district court's determinations regarding adjustment for such factors as Acceptance of Responsibility are judgments made entirely separately from the decision regarding upward or downward departure from the Guidelines, though the two decisions probably will often involve use of the same underlying facts. Compare § 1B1.3 and § 1B1.4.

In departing from the Guidelines, the district court carefully considered the circumstances of Jordan's particular case and did not act out of generalized dissatisfaction with the Guidelines. Because the district court did not rely on any impermissible ground in deciding to depart, we need not decide whether any improper reasons would have called for reversal. *Compare United States v. Nuno–Para,* 877 F.2d 1409, 1414 (9th Cir.1989) (remand where improper and proper reasons given) *with United States v. Rodriguez,* 882 F.2d 1059, 1066–1068 (6th Cir.1989) ("reasonable" departure despite district court's use of impermissible rationale). The upward departure was warranted under the circumstances of Jordan's case and the amount of the departure was not unreasonable in light of his continuing criminal activity.

### III.

For the reasons discussed above, the sentence of the district court is affirmed.