**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Luis BLAS, Defendant–Appellant.**

**No. 90–2071.**

United States Court of Appeals,
Seventh Circuit.

Submitted Dec. 11, 1990.

Decided Nov. 14, 1991.

As Amended Nov. 19, 1991.

Joseph R. Wall, Asst. U.S. Atty., Rodney Cubbie, Office of the U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Charles W. Jones, Jr., Bayside, Wis., for defendant-appellant.

Before COFFEY, EASTERBROOK, and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

After a jury trial Luis Blas was convicted of one count of conspiracy to distribute two kilograms of cocaine in violation of 21 U.S.C. §§ 846[1] & 841(a)(1)[2] and 18 U.S.C. § 2[3] as well as one count of possession with intent to distribute one kilogram of cocaine in violation of 21 U.S.C. § 841(a)(1). The district court sentenced Blas to 180 months imprisonment on each count with the sentences to run concurrently with each other for a total of 180 months followed by four years of supervised release upon completion of his period of confinement. Blas appeals his conviction as well as his sentence. We affirm.

## I. BACKGROUND

In November of 1989, Michael Bischel was arrested by the Milwaukee County Sheriff's Department subsequent to a search of his home for marijuana pursuant to a search warrant. Thereafter, Bischel became a confidential informant for the Drug Enforcement Unit of the Sheriff's Department acting under the supervision of Detective Kevin Carr. On November 30, 1989, at Detective Carr's direction, Bischel contacted Felipe Maldonado, an acquaintance of four or five years, in an effort to effect a controlled purchase of one kilo of

---

1. "Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both...."

2. "[I]t shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance...."

3. "(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

"(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

cocaine. Maldonado agreed to see if he could get a kilogram, stating that it would cost $28,500. The following day Maldonado contacted Blas at Glady's Mini–Mart at 603 East Locust Street, Milwaukee, Wisconsin to discuss whether Blas had a kilo of cocaine available. Blas stated that he had a kilo available for $27,000. About December 6 or 7 Bischel informed Maldonado that he wished to purchase two kilograms of cocaine rather than one. When Maldonado discussed buying an additional kilogram with Blas, Luis stated that he had two kilos left and would sell both of them to Maldonado for $26,000 each, or a total of $52,000; the price to Bischel remained $28,500 per kilogram, or a total of $57,000.

On Sunday, December 10, 1989, Maldonado spoke with Bischel as well as Blas in an attempt to finalize arrangements for the delivery of the cocaine. They agreed that on Monday morning Bischel would bring the $57,000 to Maldonado's home and remain inside while Maldonado took the money to Blas outside the residence and exchanged the money for the cocaine. On Monday morning Blas called Maldonado at work and suggested that he come down to Glady's Mini–Mart to discuss a change in plans. Blas wanted Maldonado to bring the $57,000 to the Mini–Mart and give it to him in exchange for the first kilogram of cocaine, deliver that kilo to Bischel, and return to the Mini–Mart to pick up the second kilogram. After agreeing to the change in plans, Maldonado proceeded to his home to meet Bischel. When Bischel arrived at Maldonado's place, he was wearing a recording device supplied by the Milwaukee County Sheriff's Department.

According to the tape-recorded conversation between Bischel and Maldonado, Bischel refused to agree to give up the money prior to receiving the cocaine. Maldonado called Blas' beeper number and asked Blas to return his call so he could "work out the deal." When Blas called, he refused to negotiate over the phone and directed Maldonado to come down to the Mini–Mart. Shortly after arriving at the Mini–Mart,

Maldonado informed Blas that Bischel wanted Maldonado to turn over the cocaine (kilo) before he would give him the money. Blas agreed to send a kilo with Maldonado, after which Maldonado would in turn deliver the $57,000 to Blas and then turn over possession of the second kilogram to him.

When Maldonado returned home with the cocaine, Bischel was waiting in his car in front of Maldonado's house. Maldonado opened his trunk to show the cocaine to Bischel, closed the trunk lid and walked with Bischel toward Bischel's car purportedly to get the $57,000 out of Bischel's trunk. Bischel signaled the surveillance officers and Maldonado was arrested. Maldonado (under arrest) agreed to assist the investigators in their efforts to apprehend Blas. He gave Blas' beeper number to the officers who thereupon dialed the number and entered Maldonado's phone number for the return call. Maldonado consented to the investigators recording the conversation between Blas and Maldonado when Blas returned the call. During that conversation, Blas instructed Maldonado to give the cocaine money to "Jim" at the store, and Maldonado said he would have to pick up the other kilogram later because he was running late and was due at work. During the taped conversation Blas specifically inquired as to whether Bischel liked the cocaine he received, and Maldonado responded he did. Maldonado then proceeded to Glady's Mini–Mart (under surveillance) in an attempt to deliver the money to Blas, but neither Blas nor "Jim" were there. At that time the police officers took back the bait money and Maldonado returned to work. About 3:30 or 4:00 p.m. Blas stopped by Maldonado's place of employment, and in accordance with police instructions, Maldonado informed him that police officers stopped him on his way to work, searched his car and took the money, informing him that if Blas wanted his money back he could get it from them.[4] Milwaukee County Sheriff Deputies arrested Blas at Glady's Mini–Mart the following day.

---

4. Maldonado testified as to the details of the attempted delivery of the money and the subsequent encounter with Blas at the sentencing hearing rather than at trial.

On December 19, 1989, a federal grand jury returned a two-count indictment charging Luis Blas with one count of conspiracy to possess with intent to distribute two kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846 and 18 U.S.C. § 2, and one count of possession of one kilogram of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Blas was tried before a jury February 20–26, 1990. At trial, the government introduced in evidence the tape-recorded conversations between Maldonado and Bischel as well as the recording of the telephone conversation between Maldonado and Blas. Maldonado, the government's primary witness, identified the voices on the tapes and testified as to the details of the conspiracy between himself and Blas to sell two kilograms of cocaine to Bischel. On February 26, 1990, Blas was convicted of both counts of the indictment. At the sentencing hearing, Maldonado further testified as to the details of a larger conspiracy involving the Blas brothers, Luis, Nelson and Jamie. The larger conspiracy involved the transportation of cocaine from Nelson, a Florida resident, to Luis Blas and Jamie Blas in Milwaukee. The conspiracy also included Mario Morales as well as Julio Hernandez transporting the cocaine from Florida to Milwaukee and Hernandez as well as his live-in girlfriend, Andrea Flees, selling cocaine. The government presented additional evidence from DEA Agent Richard Andrews and FBI Agent Richard Dye regarding the extent of the larger conspiracy. The government asserted that its evidence demonstrated that Blas was responsible for fifteen to fifty kilograms of cocaine during the period of the larger conspiracy. The district court disagreed and found Blas responsible for only five to fifteen kilograms, thus establishing a base offense level of 32 under Section 2D1.1(c) of the Sentencing Guidelines. The court granted the government's request for a two point enhancement for Blas' aggravating role under § 3B1.1(c) for directing the activities of others in selling cocaine and rejected the defendant's belated attempts to accept responsibility at the end of the sentencing hearing for a downward adjustment of two points. With an offense level of 34 and a criminal history category of 1, the Sentencing Guidelines provide for a sentence of 151–188 months imprisonment; the judge sentenced Blas to 180 months total imprisonment.

## II. ISSUES

The defendant presents the following questions for our review: 1) Was the evidence sufficient to establish that Blas was part of a conspiracy to distribute cocaine and that he possessed cocaine with the intent to distribute it; 2) was Blas entitled to the production of the documents a government witness used prior to the sentencing hearing to refresh his recollection; 3) was the trial judge's findings that the appellant was responsible for the delivery of between five and fifteen kilograms of cocaine as part of the same course of conduct or a common scheme or plan clearly erroneous; and 4) did the district court abuse its discretion in refusing to grant a two-point reduction in the offense level for Blas' attempt to accept responsibility for his offense at the end of the sentencing hearing?

## III. SUFFICIENCY OF THE EVIDENCE

■ The appellant faces an arduous task in attempting to persuade us to reverse his conviction on the basis of insufficient evidence of his involvement in the conspiracy charged and his possession of the cocaine with the intent to distribute it. "Initially, we 'review all the evidence and all the reasonable inferences that can be drawn from the evidence in the light most favorable to the government.' *United States v. Pritchard*, 745 F.2d 1112, 1122 (7th Cir.1984)." *United States v. Nesbitt*, 852 F.2d 1502, 1509 (7th Cir.1988).

"A verdict will withstand a sufficiency of the evidence challenge unless there is no evidence from which the jury could find guilt beyond a reasonable doubt. *See United States v. Beverly*, 913 F.2d 337, 360 (7th Cir.1990); *United States v. Durrive*, 902 F.2d 1221, 1225 (7th Cir. 1990). In appeals of jury trials such as

this case, we are obliged to ' "defer to reasonable inferences drawn by the jury and the weight it gave to the evidence. Likewise, we leave the credibility of witnesses solely to the jury's evaluation, absent extraordinary circumstances." ' *Beverly*, at 360 (quoting *United States v. Hogan*, 886 F.2d 1497, 1502 (7th Cir. 1989) (citation omitted)). To sustain the conspiracy charge against [Blas], the government need only prove the existence of the conspiracy and a participatory link with the defendant[ ]. *Durrive*, 902 F.2d at 1225; *United States v. Missick*, 875 F.2d 1294, 1297 (7th Cir.1989). Substantial evidence must support both the existence of the conspiracy and the defendant['s] participation in it. *Durrive*, 902 F.2d at 1229. Nonetheless, we 'view the evidence in the light most favorable to the government and accept circumstantial evidence as support, even sole support, for a conviction.' *Id.*"

*United States v. Gonzalez*, 933 F.2d 417, 437 (7th Cir.1991) (quoting *United States v. Caudill*, 915 F.2d 294 (7th Cir.1990)). The appellant's challenge to the sufficiency of the evidence is based on the credibility of Maldonado's testimony rather than the content of it. He apparently concedes that Maldonado's testimony, if credible, supports his conviction; but he "challenges Maldonado's truthfulness especially in light of the fact that Maldonado, a known cocaine trafficker, has serious drug charges pending."

"Our role [in assessing a claim of insufficiency of evidence] is further limited when the credibility of a witness is at issue. This is a matter inherently within the province of the jury, and ... this court will not reevaluate the testimony of a witness to determine his or her motives or other possible measures of reliability. *United States v. Garner*, 837 F.2d 1404, 1423 (7th Cir.1987).

"When a conviction rests solely upon the uncorroborated testimony of an accomplice, we will uphold the verdict unless the accomplice's testimony is incredible as a matter of law...."

*United States v. Dunigan*, 884 F.2d 1010, 1013 (7th Cir.1989); *see also United States v. Harty*, 930 F.2d 1257, 1266 (7th Cir. 1991). Maldonado testified that he and Blas agreed to sell two kilograms of cocaine to Bischel (Blas was unaware of the identity of the buyer) for $52,000, and that Blas provided him with the kilo of cocaine that was in the trunk of his car at the time of his arrest. He further identified Blas as the person whose telephone call to him after his arrest was recorded by police officers as Blas and Maldonado discussed the payment for the two kilograms and the delivery of the second kilogram of the cocaine as well as his inquiry as to whether the buyer was satisfied. Under *Dunigan*, Blas must demonstrate that Maldonado's testimony was "incredible as a matter of law" in order to succeed in his challenge to the sufficiency of the evidence.

"To be incredible as a matter of law, a witness' testimony must be unbelievable on its face. In other words, it must have been either physically impossible for the witness to observe that which he or she claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all."

*Dunigan*, 884 F.2d at 1013. Blas has failed to argue that it was physically impossible for Maldonado to possess the information to which he testified or that it was "impossible under the laws of nature for the occurrence to have taken place at all," and, indeed, we are of the opinion that the record would fail to support such an argument. Thus, since Blas has failed to establish that Maldonado's testimony was incredible as a matter of law, his insufficiency of the evidence claim must fall.[5]

---

**5.** Blas further asserts that the trial court committed reversible error in refusing to give a jury instruction on Maldonado's character for untruthfulness, since cross-examination demonstrated that Maldonado lied on a job application and failed to report income on his federal income tax returns. The appellant argues that

because Federal Rule of Evidence 608 allows a defendant to attack the credibility of a witness through the presentation of opinion and reputation evidence of character for untruthfulness or in the alternative, for attacking the witness' character for untruthfulness on cross-examination, the district judge was required to give the

## IV. PRODUCTION OF DOCUMENTS

■ On cross-examination during the sentencing hearing, DEA Agent Richard Andrews stated that he reviewed a number of different reports prior to testifying, including a report from the Georgia State Police regarding an arrest of Blas in Georgia, as well as investigators' reports regarding Julio Hernandez, Nelson Blas, Andrea Flees and others. The defendant moved for production of these documents under Federal Rule of Evidence 612 and 18 U.S.C. § 3500(c), but the trial judge denied the request:

> "The Court will determine that it is not necessary in the interests of justice that [the government] produce these documents. I do feel that there are other means by which the accuracy of this witness' statements can be tested. I realize that it does in some instances put the defendant at a disadvantage because of the fact that the witness has obviously by his own testimony reviewed a large number of documents. But to put the Court in the position of examining these writings in camera and excising the portion that is not related to this matter, would be to drag this matter out for another trial. And I don't believe that that's what was intended."

■ It is well settled that "an evidentiary ruling will be reversed only if the trial court committed *a clear abuse of discretion.*" *United States v. Herrero,* 893 F.2d 1512, 1530 (7th Cir.1990) (citations omitted) (emphasis in *Herrero* ). An appellant faces a heavier burden than usual in attempting to establish an abuse of discretion under Rule 612(2) when the trial court has refused to order production of government documents:

> "where a witness does not use his notes or memoranda in court, a party has no absolute right to have them produced and to inspect them. Where, as here, they are not only the witness' notes but are also part of the Government's files, a large discretion must be allowed the trial judge."

*Goldman v. United States,* 316 U.S. 129, 132, 62 S.Ct. 993, 995, 86 L.Ed. 1322 (1942), *overruled on different grounds by Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Indeed, the appellant has failed to cite, and we are unaware of, any case holding that a district court abuses its discretion under Rule 612 when refusing to order production of government documents that a witness reviewed prior to testifying at trial, much less at a sentencing proceeding, where the evidentiary rules are relaxed.

### A. 18 U.S.C. § 3500 (Jencks Act)

Initially, we note that although Blas claims entitlement to the documents under the Jencks Act, he fails to allege that the records Andrews reviewed contained Jencks Act "statements." In the Jencks Act, the term statement means:

> "(1) [A] written statement *made by said witness* and signed or otherwise adopted or approved by him;
>
> "(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement *made by said witness* and recorded contemporaneously with the making of such oral statement; or
>
> "(3) a statement, however taken or recorded, or a transcription thereof, if any, *made by said witness* to a grand jury."

proposed instruction to the effect that "evidence has been introduced of the character trait of a witness, Felipe Maldonado for untruthfulness. You should consider this evidence in deciding the weight that you will give to Mr. Maldonado's testimony." We deem this issue waived, since Blas has neglected to support his argument through case law. "We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where

those arguments raise constitutional issues)." *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir.1991). Furthermore, we note that the instruction implied that Blas introduced evidence to establish that Maldonado possessed the character trait of being untruthful. Blas presented no evidence of untruthfulness other than cross-examination, and, as the trial judge stated, Blas failed to "sufficiently develope[ ] [the character trait] to warrant the instruction...."

18 U.S.C. § 3500(e) (emphasis added). As we stated in *United States v. Allen*, 798 F.2d 985, 994 (7th Cir.1986), "the emphasis clearly is on whether the statement can fairly be deemed to reflect fully and without distortion the witness's own words." Blas has failed to assert and the record is void of any evidence that the records Andrews reviewed prior to testifying contained statements "made by" Andrews. Thus, the documents were not Andrews' "statements" and do not require production under the Jencks Act.[6]

### B. Rule 612

■ The appellant argues that it was error for the district court to deny production of the documents because he "was not able to impeach the testimony effectively without those reports."[7] Initially, we note that Rule 1101(d)(3) *explicitly makes the evidentiary rules, "other than with respect to privileges," inapplicable to sentencing proceedings:* "The rules (other than with respect to privileges) do not apply in the following situations: ... Proceedings for extradition or rendition; preliminary examinations in criminal cases; *sentencing,* or granting or revoking probation ..." (Emphasis added). *See United States v. Jarrett*, 705 F.2d 198, 208 (7th Cir.1983). But even if Rule 612 were applicable, the appellant's argument would fail. Under Rule 612 of the Federal Rules of Evidence,

> "if a witness uses a writing to refresh memory for the purpose of testifying, either—
>
> (1) while testifying, or

(2) before testifying, if the court in its discretion determines it is necessary in the interests of justice,

an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness."

"The purpose of the rule is the same as that of the *Jencks* statute, 18 U.S.C. § 3500: to promote the search of credibility and memory." Fed.R.Evid. 612 advisory committee's note. Even in the trial itself, "the guaranty that a defendant will have an effective opportunity to test the accuracy of adverse evidence ... does not include the opportunity to test the evidence 'in whatever way, and to whatever extent the defense might wish.'" *United States v. Briscoe*, 896 F.2d 1476, 1492 (7th Cir.1990). As noted above, the sentencing judge found that it was "not necessary in the interests of justice that [the government] produce" the documents that Andrews reviewed prior to testifying because there were other avenues open to test the accuracy of Andrews' testimony such as cross-examination. The defendant was given great latitude and more than ample opportunity from our review of the record to investigate the "credibility and memory" of Agent Andrews through cross-examination. The transcript of the sentencing hearing contains some seventeen pages of direct examination of Andrews while the cross-examination constitutes more than three times as much, namely sixty pages. De-

---

6. Blas argues that 18 U.S.C. § 3500(c) requires "that if there's a dispute as to relevance of statements, reports, etc., the court shall view the documents in camera excising any irrelevant portions and then direct delivery of such documents to the defendant.... If the defendant objects to any of the withheld statements, the trial is to continue, but the entire text of the documents shall be preserved in the event of an appeal so that the appellate court may determine the correctness of the trial judge's ruling." The appellant's point is valid, but irrelevant. The Jencks Act deals with statements of a witness, and, as we held above, the documents at issue were not Andrews' "statements," since he did not make them. Thus, 18 U.S.C. § 3500(c) is inapplicable.

7. The appellant further argues that "the reports at issue were crucial to preparing an effective defense because they allege Mr. Blas' involvement in a much larger conspiracy. Consequently, counsel was not afforded the opportunity to fully investigate all the allegations made against the defendant." This argument fails to demonstrate an abuse of discretion under Rule 612, for that rule requires production for the purpose of impeaching a witness' testimony rather than for the purpose of enhancing defense counsel's investigation of the charges. Hence, Blas has failed to carry the burden of establishing that "the trial court committed a clear abuse of discretion." *Herrero*, 893 F.2d at 1530.

fense counsel questioned Andrews in great detail regarding the times, places and amounts of cocaine that Andrews testified were involved in the larger conspiracy. Furthermore, the court noted that Andrews testified that he reviewed a large volume of material, and the judge was concerned that the process of excising irrelevant material from the documents and dealing with the defendant's challenges to the exclusion of the material would have constituted another trial. Blas was unable to demonstrate to the trial court and now is unable to demonstrate to the appellate court why it was "necessary in the interest of justice" for the trial court to grant production of the documents or that the court was mistaken in assessing the burden involved in reviewing the documents *in camera.* Thus, the appellant has failed to establish that the trial court abused its discretion in refusing to order the production of the material.

■ More importantly, if Andrews' testimony were excluded from the record, the defendant's sentence would be unaffected. The government argued that the evidence it presented demonstrated that Blas was responsible for over fifteen kilograms of cocaine, which constitutes a base offense level of 34 under the Sentencing Guidelines, but the district court disagreed. The court found that:

> "A preponderance of the evidence has established something in the neighborhood of eleven kilos, depending upon how you treat the one, two, or three ounce descriptions of Mr. Maldonado, it could be up to probably fourteen. But the Court does not feel that it would support the next level, and therefore feels that the appropriate amount is between five and fifteen kilos."

Thus, Blas was assigned a base offense level of 32 in accordance with Section 2D1.1(c) of the Sentencing Guidelines. Since the total amount of cocaine that Andrews testified about was less than five kilograms, the exclusion of that testimony would result in holding Blas responsible for six kilograms, still within the base offense level of 32. Thus, the court's refusal to grant the defendant's request for produc-

tion of the government documents would fail to justify remand for resentencing even if we were to hold that the court had abused its discretion in sentencing, for it would constitute harmless error.

## V. SAME COURSE OF CONDUCT OR COMMON SCHEME OR PLAN

■ At sentencing, the government attempted to establish that Blas was part of a larger conspiracy involving two of his brothers, Nelson and Jamie, in addition to other individuals including Julio Hernandez and Andrea Flees. The government argued that the larger conspiracy was responsible for distributing between fifteen and fifty kilograms of cocaine, which was part of the same course of conduct or common scheme or plan as the conspiracy of which Luis Blas was convicted. The government's evidence of Blas' involvement in the larger conspiracy and the amount of cocaine consisted of testimony from Maldonado, DEA Agent Richard Andrews and FBI Agent Richard Dye. The district court found that Blas was part of the larger conspiracy and, as noted above, that he was responsible for "something in the neighborhood of eleven kilos." The sentencing judge's factual determination that Blas was part of the larger conspiracy and responsible for between five and fifteen kilograms of cocaine "is entitled to great deference on review and should not be disturbed unless it is without foundation." *United States v. Jordan,* 890 F.2d 968, 972 (7th Cir.1989) (quoting Application Note 5, *Manual* at 3.24). *See also United States v. Harty,* 930 F.2d 1257, 1266 (7th Cir.1991) (appellate court will not reweigh the evidence); *United States v. Herrera,* 878 F.2d 997, 1000 (7th Cir.1989) (When there are two permissible views of the evidence, the sentencing judge's choice "cannot be clearly erroneous.").

■ Blas contends that the government failed to prove the larger conspiracy by a preponderance of the evidence because "Maldonado testified that the alleged conspiracy did not include the defendant's brothers. In fact, he indicated that the brothers were competitors." Blas' argu-

ment that he and his brothers were competitors rather than conspirators is unsupported in the record. It is interesting to note that the defendant's attorney's misleading record citation given in support of the argument was in fact not testimonial evidence but merely defense counsel's argument at the sentencing hearing, wherein he argued that Maldonado testified that the brothers were competitors. The record reveals that Maldonado testified that the defendant and his brother, Nelson, approached Maldonado together to inquire about buying large cars for the purpose of transporting cocaine to Florida. He further testified that Nelson Blas was shipping cocaine from Florida to Luis Blas in Milwaukee, and that one particular kilogram of cocaine that he (Maldonado) received from Nelson actually belonged to Luis. Thus, Maldonado's testimony supports the existence of the larger conspiracy rather than denying its existence. Since Maldonado's testimony provided a foundation for the trial court's factual determination that Blas was part of the larger conspiracy and responsible for five to fifteen kilos of cocaine, Blas has failed to demonstrate that the finding was clearly erroneous. *See Jordan*, 890 F.2d at 972.

█ The appellant further argues that "[i]f the government wanted the defendant sentenced for a larger conspiracy, they should have indicted him for it or, in the alternative, pursue a separate indictment for such a conspiracy.... [T]he court is limited to the charged or common scheme in calculating the amount of cocaine involved." Federal Sentencing Guideline § 1B1.3(a)(2) states that in determining the base offense level, the court shall consider "solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction...." Section 3D1.2(d) states that closely-related counts should be grouped

"[w]hen the offense level is determined largely on the basis of the total amount of harm or loss, *the quantity of a substance involved,* or some other measure

of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior."

(Emphasis added). Since the offense level for selling cocaine is based on "the quantity of a substance involved," if Blas had been charged with an additional count alleging the larger conspiracy, the two conspiracies could have been grouped together for sentencing purposes. Thus, any cocaine sold as part of the larger conspiracy was considered by the court as "part of the same course of conduct or common scheme or plan" and was properly included in determining Blas' base offense level. We have held that:

"[W]hen the Guidelines provide tables that cumulate the amount sold or stolen, any acts that 'were part of the same course of conduct or common scheme or plan as the offense of conviction' should be included in the computation of the amount on which the offense level depends, whether or not the defendant was convicted of selling or stealing these additional amounts."

*United States v. White*, 888 F.2d 490, 497 (7th Cir.1989). We believe that since the cocaine involved in the larger conspiracy should be grouped with the two kilo conspiracy for which Blas was convicted pursuant to § 3D1.2(d), if the former were charged, the cocaine from the larger conspiracy qualifies as being "part of the same course of conduct or common scheme or plan as the offense of conviction" under § 1B1.3(a)(2). Thus, the district judge properly sentenced Blas on the basis of the amount of cocaine established by the preponderance of the evidence.

## VI. ACCEPTANCE OF RESPONSIBILITY

█ At the very end of the sentencing hearing, immediately prior to imposition of sentence, the defendant made a feeble attempt to accept responsibility. Defense counsel stated "[Blas] wants to accept responsibility. The [probation officer's presentence] report says he did not accept responsibility. He tried to accept responsibility and he didn't get the opportunity of

doing so." The judge's response was that "[t]he Court finds that there is a [sic] not sufficient support for the credit the defendant seeks here...." Blas argues that he "clearly met all the elements enumerated in Section 3E1.1, Acceptance of Responsibility, towards the end of the sentencing hearing." He states that it was reasonable to wait until that time in order "to avoid admission of disputed information." Under § 3E1.1(a), "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, [the court may] reduce the offense level by 2 levels." Application Note 1 includes the following considerations in determining whether the defendant has accepted responsibility: "(c) voluntary and truthful admission to authorities of involvement in the offense and related conduct; ... (g) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility." Waiting until the district judge has resolved the disputed facts at the critical moment of sentencing "to avoid admission of disputed information" is inconsistent with considerations (c) and (g). Even though Blas claims he was accepting responsibility for the charges of conspiracy to distribute two kilograms of cocaine as well as possession with the intent to distribute one kilo, his actions belie the argument. If he were willing to accept responsibility, he would have admitted his involvement in the crimes charged to the investigating probation officer as well as to the court. Furthermore, we do not believe the defendant's last-minute desperation attempt to accept responsibility is a timely manifestation of such acceptance.

Even if it were reasonable for Blas to wait until the very end of the sentencing hearing to accept responsibility (which we refuse to hold was a timely acceptance of responsibility within the Guidelines and case law), he failed to demonstrate acceptance to the satisfaction of the trial judge, and furthermore he has failed to establish that the district judge's finding that there was not "sufficient support for the credit" was clearly erroneous.

"Whether [Blas] accepted responsibility within the meaning of § 3E1.1 is essentially a question of fact for the district court to resolve. We will uphold a district court's factual findings in determining a sentence unless they are clearly erroneous. 18 U.S.C. § 3742(e). Specifically, the commentary to § 3E1.1 states that '[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation.' Application Note 5."

*United States v. Franklin*, 902 F.2d 501, 505 (7th Cir.1990) (citations omitted). Although the district judge failed to specifically state *why* there was "not sufficient support for the credit the defendant" requested, as we have noted above, there is more than an adequate foundation in the record for such a finding. Thus, we are of the opinion that the district court's refusal to grant a two-point reduction in Blas' offense level for acceptance of responsibility was not clearly erroneous.

## VII. CONCLUSION

The appellant has failed to establish that the district court abused its discretion or committed clear error during the trial or during sentencing. The judgment of the district court is

AFFIRMED.