116 F.3d 1483
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Diane ISMAIL, Defendant-Appellant.
 No. 96-3824.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 13, 1997*
Decided June 17, 1997.
 
 Before POSNER, C.J., Easterbrook and Manion, Circuit Judges.
 ORDER
 lOZANO, Judge.
 
 
 1
 Diane Ismail wanted to buy a house. She knew the bank would not give her a mortgage, because she had filed for bankruptcy. She thought she could solve this problem by drafting a document stating that she had been discharged from bankruptcy, and forging the signature of the bankruptcy judge. The scheme didn't work, and Ismail pleaded guilty to forging the signature of a bankruptcy judge. 18 U.S.C. § 505. As part of her plea agreement, she agreed to refrain from further criminal conduct. The government agreed to (and did) recommend that she receive a two-point reduction in her base offense level for acceptance of responsibility, as long as she demonstrated that she continued to accept responsibility for her crime. U.S.S.G. § 3El.1. After the Presentence Investigation Report (PSR) was filed, the government learned of allegations that after Ismail's employment had terminated, she used her former employer's credit card without authorization. At the sentencing hearing, the government submitted various receipts and billings as evidence of Ismail's illegal use of the credit card. Ismail did not testify at the hearing. Rather, she proffered evidence that she was in Houston, Texas at the time the credit card was used.[1] She also informed the court that she was suffering from severe grief because her son had been murdered the previous month, and she was thus unlikely to have been out shopping. Based on the government's evidence, the sentencing court refused to give Ismail the two-point reduction for acceptance of responsibility, and sentenced her to five months in prison, plus two years of supervised release. Ismail appeals, arguing that the court clearly erred in denying her the reduction. We affirm.
 
 
 2
 Ismail first argues that the government's evidence was insufficient to show that she used the credit card. We disagree. Sentencing depends on proof by a preponderance of the evidence, not proof beyond a reasonable doubt. United States v. Watts, 117 S.Ct. 633, 638 (1997). Moreover, "[t]he rules of evidence do not apply and the sentencing judge is free to consider a wide range of evidence, including hearsay." United States v. Windom, 82 F.3d 742, 747 (7th Cir.1996). In the case at bar, the government provided evidence that Ismail's employer fired her after she pleaded guilty, and ordered her to return her company credit card; that company officials reported that Ismail neither returned the card nor reported that it had been stolen; that in the three days after the company canceled the card (and after Ismall had formally been terminated from her job), someone used it eight times to charge over $2,000 in goods and services; that at least two of those charges were to a cellular phone company for calls from a number registered to Ismail's son at Ismail's home address; that Ismail had previously made several improper charges to the same cellular phone company while she legitimately held the card; that the card had also been used several times at retail stores[2] before Ismail was formally terminated but after she was placed on leave from her job; and that Ismail had denied using the card to the Probation Office, and maintained that she did not have possession of the card. The court did not err in concluding that this evidence was sufficient to establish that Ismail illegally used the credit card.
 
 
 3
 Ismail next maintains that even if she did illegally use the credit card, the district court nonetheless should have granted her the reduction. In determining whether a defendant is entitled to the reduction, Ismail points out, the Sentencing Guidelines require the court to look at a variety of factors. And so they do. But one of the appropriate considerations under the Guidelines is whether a defendant has "voluntar[il]y ... withdrawn from criminal conduct." U.S.S.G. § 3E1.1, Application Note 1(b); ited States v. Jordan, 890 F.2d 968, 974 (7th Cir.1989). Indeed, because a defendant is not entitled to the reduction as a matter of right just because she pleads guilty, the sentencing court must "look beyond formalistic expressions of culpability and ... determine whether the defendant has manifested an acceptance of personal responsibility for [her] offense in a moral sense." United States v. Hammick, 36 F.3d 594, 600 (7th Cir.1994). For that reason, "conduct that is inconsistent with real acceptance of responsibility is an adequate reason for denying the downward adjustment." United States v. Gordon, 64 F.3d 281, 285 (7th Cir.1995). We have long recognized that a defendant who persists in the same type of criminal activity while awaiting sentencing has not accepted responsibility for the criminal behavior within the meaning of the Guidelines. Jordan, 890 F.2d at 974. Because forging another person's signature and using another person's credit card are comparable crimes, Ismail can hardly claim that her illegal use of the credit card was irrelevant to her acceptance of responsibility for the forgery. Based on the evidence, the sentencing court was entitled to conclude that Ismail had not ceased the kind of conduct to which she pleaded guilty, and therefore was not entitled to a reduction for acceptance of responsibility.
 
 
 4
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Therefore, the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a); Cir. R. 34(f)
 
 
 [1]
 An ATM withdrawal (not on the company credit card) suggested that Ismail was in Houston on July 25, 1996, the day she was formally terminated. The charges in question were made in the Chicago area on July 27 and July 29, 1996
 
 
 [2]
 Employees were supposed to use the cards only to purchase office supplies