**UNITED STATES of America**

v.

**Sheila K. SMAW, Appellant.**

No. 92–3078.

United States Court of Appeals, District of Columbia Circuit.

Argued March 5, 1993.

Decided May 28, 1993.

A.J. Kramer, Federal Public Defender, with whom James R. Holloway, Asst. Federal Public Defender, was on the brief, for appellant.

Daniel M. Zachem, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty.,* John R. Fisher, Roy W. McLeese, III, and Blanche

* At the time the brief was filed.

L. Bruce, Asst. U.S. Attys., were on the brief, for appellee.

Before: RUTH BADER GINSBURG, SILBERMAN, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Appellant challenges several aspects of her sentencing. We affirm the district court's enhancement of her sentence for obstruction of justice and its refusal to grant a reduction for acceptance of responsibility, but we remand for further fact-finding to determine whether an "abuse of trust" enhancement is appropriate in this case.

## I.

After she filed a personal bankruptcy petition, Sheila Smaw, a secretary at the Federal Trade Commission (FTC), could not secure credit through legitimate channels. Apparently frustrated by her predicament, she initiated a scheme to obtain credit cards fraudulently. She first used fictional names and fabricated social security numbers, but in early 1989, Smaw began to apply for credit cards using the actual names and personal data of approximately eight fellow employees at the FTC. She gained that information from casual contacts as well as from FTC documents. Her technique was to have the cards sent to various Washington mailing addresses, but to use an FTC number for a telephone contact. Smaw retained exclusive control over that number via a voice mail access code. Eventually, she obtained over 30 credit cards with which she made approximately $50,000 in purchases and cash advances.

Investigators from the FTC's Inspector General's Office approached Smaw with mounting evidence of her fraudulent behavior. She gave the investigators a statement detailing the scheme. A three-count indictment was then filed that charged Mrs. Smaw with credit card and mail fraud, in violation of 18 U.S.C. §§ 1029 and 1341 respectively, and charged her husband with violating § 1029. Mrs. Smaw pleaded guilty to both counts filed against her.

In preparation for sentencing, a probation officer requested that Smaw complete a personal financial statement. One of the sections on that form, entitled "real estate," asked Smaw to list the address, purchase date and cost, fair market value, mortgage balance, monthly payment, and mortgage pay off date of any real estate she held. Smaw wrote "N/A." The probation officer later discovered that Smaw and her husband had entered a contract in April 1991 to purchase a house on Iowa Avenue, N.W., for $100,000. The Smaws financed the purchase with a mortgage held by the seller. Although the record is unclear, it appears that at the time of the probation officer's discovery, the Smaws had made a few improvements and some payments to the seller, but had not yet moved into the house. After investigating, the probation officer concluded that the Smaws had no equity in the house.

At sentencing, the district judge made several rulings over Smaw's objections. First, he accepted the probation department's recommendation that Smaw receive a two-level obstruction of justice enhancement because she omitted the house from the financial statement. He did not accept Smaw's explanation that she did not list the house because she had thought that the sales process was not yet final. The judge also rejected Smaw's application for a two-level acceptance of responsibility reduction because he concluded that her failure to disclose the real estate demonstrated that she had not fully accepted responsibility for her actions. Finally, the judge added two levels to Smaw's base offense because he found that she had abused a position of trust by using her co-workers' confidential information. Smaw had claimed that she did not abuse such a position because she had not gathered the information in her capacity as the department's official time and attendance clerk. The district court assumed the truth of that representation but ruled nonetheless that even "[i]f she didn't ... need to know that information in connection with her work, then for her to have availed herself of its accessibility to her because she was in the

office, in my judgment, represents a breach of trust." Based on these rulings, the trial judge sentenced Smaw to two consecutive 18–month terms, which were later modified to concurrent 30–month terms. Smaw challenges that sentence on appeal.

## II.

### A. *Failure to Disclose the Real Estate Interest*

■ Smaw claims no harm; no foul. The probation officer ultimately determined that Smaw had no equity interest in the house. She refers to the Guideline's commentary which states that an enhancement is appropriate for individuals who provide "materially false information to a probation officer." U.S.S.G. § 3C1.1, Application Note 3(h). The commentary defines as "material," any information "that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, Application Note 5. Smaw claims that because the relevant issue before the court was her ability to pay a fine or restitution, her failure to disclose an asset that was determined to have no value could not possibly have been material.

Smaw asserts that "she did not consider herself the lawful owner of the property" and that "the sale of the house had not yet been finalized." The district court, however, did not credit Smaw's assertion that she filled out the form under the impression that she had no interest in the house. We see no reason to disturb that credibility determination.

Smaw also contends that regardless of her intent, as a matter of law, her response was immaterial. But in our view, that it subsequently turned out that Smaw did not have any "equity," presumably because of the size of her loan, is not a defense to the charge that her false response was material. Her capacity to service the mortgage alone would not be irrelevant to a judge's calculation as to her ability to pay a fine. Moreover, the value of a house, at any given time, is not determinable with precision (unless it is sold), and the form in question hardly contemplates that a defendant will consult an appraiser before answering. Although the

judge, after determining that Smaw did not at the time have any "equity," might well disregard the house in ultimately assessing a fine, he would certainly wish to consider her interest. Smaw's omission therefore was "material." The word material in this context means relevant—not outcome determinative. *Cf. United States v. Baker*, 894 F.2d 1083, 1084 (9th Cir.1990) (holding that a misrepresentation concerning the number of the defendant's prior convictions was material even if it did not affect the ultimate criminal history classification); *see also United States v. Dedeker*, 961 F.2d 164, 167 (11th Cir.1992) (describing the threshold for materiality as "conspicuously low"). Indeed, the probation officer's prompt investigation of Smaw's real estate interest after it was discovered demonstrates its materiality.

■ Smaw relies for support on *United States v. Belletiere*, 971 F.2d 961 (3d Cir. 1992). There, the defendant, accused of involvement in a narcotics distribution conspiracy, told a parole officer that he did not use drugs personally, but between his trial and sentencing, tested positive for cocaine use. The Third Circuit reversed the district judge's obstruction of justice enhancement because it concluded that the misrepresentation was not an attempt to obstruct any aspect of the "instant offense" (the distribution conspiracy) and because the defendant was independently sanctioned by his bail revocation. *Id.* at 967–68. *Belletiere* is distinguishable, however, in two respects—Smaw's misrepresentation related to her ability to pay a fine or restitution for the convicted conduct, and she did not receive an independent sanction for her omission. Moreover, although the Guidelines require that the obstruction occur "during the investigation, prosecution, or sentencing of the *instant* offense," U.S.S.G. § 3C1.1 (emphasis added), we are inclined to think that the Third Circuit takes an overly narrow view of that phrase. *Cf. United States v. Jordan*, 890 F.2d 968, 973 (7th Cir.1989) (upholding enhancement for misrepresentation concerning drug use after entry of a guilty plea but before sentencing because the misrepresentation interfered with probation office's moni-

toring of the defendant).[1] Nor do we find any language in the Guidelines supporting the significance that the Third Circuit placed on whether the defendant had received an independent sanction for the misrepresentation.[2]

### B. The Enhancement for "Abusing a Public Trust"

■ Smaw also appeals the district court's decision to increase her sentence two levels because she breached a public trust. Section 3B1.3 of the Guidelines provides for such an enhancement "[i]f the defendant abused a position of public or private trust." U.S.S.G. § 3B1.3. The Court based its determination on Smaw's use of her FTC telephone and office as well as the personal data of her fellow employees, without regard to whether Smaw had special access to that data. Whether Smaw abused a trust within the meaning of § 3B1.3 is a question of law that we review *de novo*. *See United States v. Hill,* 915 F.2d 502, 505 (9th Cir.1990).

Neither the Guidelines nor the accompanying commentary offers a definition of "a position of trust"—either public or private—although the term certainly does not suggest a classic fiduciary relationship. The commentary includes only the following example:

> The position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily been afforded to other persons. *This adjustment, for example, would not apply to embezzlement by an ordinary bank teller.*

U.S.S.G. § 3B1.3, Application Note 1 (emphasis added).

The government, nevertheless, has adopted the broadest possible construction of the phrase "position of trust," and would use the term to include virtually any relationship between a defendant and wronged victims. Thus, the government argues that if a customer drives into a parking lot and hands his keys to the parking lot attendant, who subsequently uses the car to commit a crime (or steals the car), the Guideline applies. More broadly, any employee who exploits any information or comparative advantage unavailable to a non-employee to commit a crime should receive the enhancement. We do not see how the government's argument can be squared with the bank teller example used in the commentary. To be sure, a number of courts have sought to explain, and thereby limit, the bank teller example by focusing on the supposed close supervision banks impose on tellers. *See, e.g., Hill,* 915 F.2d at 505–06 (concluding that the enhancement applies when the employee is not closely supervised); *United States v. McMillen,* 917 F.2d 773, 775–76 (3d Cir.1990) (applying the enhancement because of the defendant's supervisory position).[3] The closer the supervision, it is

1. The Seventh Circuit recently revisited the issue in *Jordan* and held that subsequent amendments to the Guidelines' commentary made the enhancement inappropriate because it would impermissibly punish a refusal to admit guilt. *See United States v. Thompson,* 944 F.2d 1331, 1347–48 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1177, 117 L.Ed.2d 422 (1992). But Smaw did not need to admit guilt in order to disclose her real estate interest, and neither *Thompson* nor the amended commentary alters *Jordan's* view of the scope of the phrase "instant offense."

2. Smaw claims that even if we conclude that she made a material omission, we should reverse the district judge's refusal to grant her a two-level downward departure for acceptance of responsibility. The Guidelines commentary does state that there may be "extraordinary cases" in which a defendant receives both an obstruction of justice enhancement and an acceptance of responsibility reduction. *See* U.S.S.G. § 3E1.1, Applica-

tion Note 4. But Smaw does not explain how her case is extraordinary. And she certainly does not demonstrate that the district judge committed a clear error when he found that her misrepresentation indicated a failure to accept responsibility.

3. The Sentencing Commission, expressly noting the difficulty that courts have had applying this Guideline, has proposed to amend § 3B1.3 to add the modifier "special" before the word "trust." *See* 57 Fed.Reg. 62,842 (proposed Dec. 31, 1992). The Commission has also proposed to replace the current Application Note 1 with the following language:

> "Special trust" refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgement that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than an employee whose responsibilities are purely ministerial in na-

suggested, the less trust is reposed in an employee. But the amount of supervision is not strictly a function of the degree of trust placed in the employee; it also reflects the value of the items at risk. We rather doubt that banks or bank depositors would agree that they need not put trust in bank tellers. If there is closer supervision over the teller than, let us say, the parking lot attendant it is surely because the opportunities for massive theft are much greater with respect to the former.

In sum, we do not think the government's reading of the Guideline (and commentary) is a reasonable one. We cannot accept the notion that the defendant's mere access—"because she was in the office"—to information about fellow FTC employees is adequate to place her in a position of public trust. On the other hand, if it could be shown that defendant gained the information she exploited by virtue of her specific job as time and attendance officer—that she had special access to information not available to other employees (unlike a bank teller)—such a showing would meet the Guideline's purpose. *Cf. United States v. Lange*, 918 F.2d 707–710 (8th Cir.1990) (applying enhancement because, unlike an ordinary postal employee, the defendant had special access to express and certified mail). Because the district court did not decide the question we think determinative, we remand for further proceedings.

*So ordered.*

ture.... This adjustment would not apply in the case of an embezzlement or theft by an ordinary bank teller, hotel clerk, or postal clerk because such positions are not characterized by the above-described factors. *Id.*