**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Juan Manuel GARCIA (93–1002); Arturo Garcia (93–1056); and Howard Eugene McCully, Jr. (93–1054), Defendants–Appellants.**

**Nos. 93–1002, 1054 and 1056.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 4, 1993.

Decided March 30, 1994.

Rehearing Denied June 14, 1994 in No. 93–1002.

Donald A. Davis, Asst. U.S. Atty. (argued), B. Rene Shekmer (briefed), Office of the U.S. Atty., Grand Rapids, MI, for plaintiff-appellee.

James A. Christopherson (argued and briefed), Blakeslee, Chambers, Petterson, Dalrymple & Christopherson, Traverse City, MI, for defendant-appellant.

Before: JONES and SILER, Circuit Judges; and LIVELY, Senior Circuit Judge.

SILER, Circuit Judge.

Defendants Juan Manuel Garcia, Arturo Garcia, and Howard Eugene McCully, Jr., challenge their convictions and sentences for conspiracy to possess with intent to distribute marijuana. We affirm for the reasons set out herein.

### I.

The marijuana conspiracy in this case began in the spring of 1990, when Amador Briseno offered to pay Juan Manuel Garcia to deliver marijuana from Texas to Michigan. In August or September 1990, the marijuana deliveries began, and they ended in January 1991 with the arrest of Briseno and others in Michigan.

The conspirators transported marijuana in compartments in the front and rear bumpers of cars, with cash being returned to Texas in the same manner. Arturo Garcia, based in Texas, recruited couriers to drive the cars. When the cars arrived in Michigan, Briseno would remove the marijuana and sell it to Howard McCully, who would distribute it locally. Briseno would place money for the shipment back in the bumper compartments, and the courier would return to Texas, where Arturo Garcia would remove the cash and pay the courier. The conspirators transported at least nine loads of marijuana totaling over 600 pounds.

Briseno and Juan Garcia generally planned the scheme from Michigan, with Arturo Garcia handling the couriers and loading on the Texas end and McCully distributing the marijuana on the Michigan end. The scheme came to an end on January 26, 1991, when police officers in Michigan searched cars that were used by the defendants and found large amounts of cash stashed in compartments behind the front and rear bumpers. The defendants were subsequently found guilty of one count of conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846. Juan Garcia was sentenced to 116 months imprisonment; Arturo Garcia was sentenced to 108 months imprisonment; and McCully was sentenced to 262 months imprisonment. Each also received a sentence of five years of supervised release.

### II.

### THE TRIAL

#### A.

 The defendants challenge the admission of a videotape and an audiotape. McCully argues that the trial court should not have allowed a videotape into evidence, and Juan Garcia argues that the trial court should not have admitted a Spanish audio tape with an English oral translation. For us to uphold either of these claims, the defendants would have to make a clear showing that the trial court abused its discretion in admitting the evidence. *United States v. Moreno*, 933 F.2d 362, 375 (6th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 265, 116 L.Ed.2d 218 (1991).

The trial court determined that the videotape was admissible under Fed.R.Evid. 403. This determination constitutes an abuse of discretion only if the probative value of the evidence is substantially outweighed by its prejudicial character, when looking at the evidence in the light most favorable to its proponent. *United States v. Castro*, 908 F.2d 85, 88 (6th Cir.1990).

The videotape was made when government agents searched two cars involved

in the marijuana conspiracy. The tape shows the removal of the rear and front bumpers of the cars, revealing hidden compartments purportedly used to store marijuana. In the middle of the tape, the camera shows a bench with several packages on it and an agent counting money. Claiming that the money was never directly linked to him, and that it was so inflammatory that it rendered the jurors unable to render an objective verdict, McCully argues that this part of the tape is unfairly prejudicial.

The trial judge, however, considered the admissibility of the videotape at length and concluded it was not substantially more prejudicial than probative. The officer who filmed the search testified to its authenticity, and there was testimony that the money shown was linked to the marijuana delivery that McCully was making, serving as payment for a prior shipment. The view on the tape of the money was probative of the marijuana conspiracy on the government's theory of what had occurred. On these facts, the district court did not abuse its discretion in finding the tape admissible.

■ The Spanish audio tape was a recording of a conversation between Arturo Garcia and a man named Ernesto Gonzalez. The government made an English translation of that recording long before trial. At the pretrial hearing, a professional translator testified to the accuracy of the translation, going over many details. Though the translation is not purely literal, the expert stated that it departs only so idioms and other forms of speech make sense in English. In asking us to find the admission of the translation an abuse of discretion, Juan Garcia does not point to any inaccuracies in it, nor has he ever offered an alternative translation. He simply argues it "should not have been allowed because of the unreliability in translating foreign languages." In essence, the defendant is arguing that a translation of a foreign language conversation can never be admissible. This is surely not the case, and there was no abuse of discretion here. *Cf. United States v. Cruz*, 765 F.2d 1020, 1023 (11th Cir.1985) (defendant cannot complain if he does not offer a substitute version of transcript).

### B.

■ Juan Garcia argues that it was erroneous not to sever his trial from that of the two other co-defendants because, he claims, he was not involved in some of the transactions in which they were involved. However, he did not move to sever the trial in the district court. Fed.R.Crim.P. 14 allows for a severance of offenses or of defendants where joinder prejudices the defendant. However, Rule 12(b)(5) requires that a severance motion under Rule 14 be made prior to trial, and Rule 12(f) states that the failure to make the motion constitutes a waiver unless cause is shown to grant relief from it. Garcia did not even make the motion during the trial. Garcia has waived the severance issue on appeal, and we see no good cause to excuse his waiver. *Cf. United States v. Patrick*, 965 F.2d 1390, 1400 (6th Cir.1992) (appeal of severance motion waived where motion not renewed at the close of evidence).

### III.

### THE SENTENCING

### A.

Due to the amount of marijuana involved, the court determined the base offense level for the offense to be 26 under U.S.S.G. § 2D1.1. The court enhanced Juan Garcia's base offense by four levels because he was an organizer or leader of the conspiracy under U.S.S.G. § 3B1.1(a) and refused to grant him a two-level reduction for acceptance of responsibility under § 3E1.1. Thus, his sentence was based upon a total offense level of 30. The court gave Arturo Garcia the same four-level enhancement, as well as an additional two levels for obstruction of justice. Because the court reduced Arturo Garcia's sentence by two levels for acceptance of responsibility, he was also sentenced at a total offense level of 30. McCully's sentence was greater than the other defendants, as he had committed prior offenses that made him a "career offender" under U.S.S.G. § 4B1.1, demanding a total offense level of 34 and automatically placing him in criminal history category VI. Neither Juan Garcia nor Artu-

ro Garcia had any prior criminal convictions, so they were each sentenced under criminal history category I.

■ Each defendant challenges portions of his sentence on appeal. McCully makes two claims. First, he argues that his 262–month sentence, resulting largely from the "career offender" sentencing guideline, is so disproportionate to the gravity of his offense that it is unconstitutional under the proportionality requirement of the Eighth Amendment's Cruel and Unusual Punishment Clause. Despite the harshness of the sentence, it is not unconstitutional. In *Harmelin v. Michigan*, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), the Supreme Court upheld the constitutionality of a mandatory life sentence for simple possession of 672 grams of cocaine by a defendant who had no prior convictions. McCully's 262–month sentence for conspiracy with intent to distribute several hundred pounds of marijuana cannot therefore be disproportionate. *See United States v. Dunson*, 940 F.2d 989, 995 (6th Cir.1991) (20–year sentence imposed for possession with intent to distribute seven kilograms of cocaine was not unconstitutionally disproportionate), *cert. denied*, — U.S. —, 112 S.Ct. 1488, 117 L.Ed.2d 629 (1992)

Second, McCully argues that the case should be remanded because he asked for a departure downward from the sentencing guidelines but "from the Court's response it is unclear that the Court believed it had the authority to do so." However, the sentencing transcript shows that when McCully's lawyer argued for a departure downward, the court rejected the argument and specifically stated that it saw nothing on which it could depart from the Guidelines. The judge instead sentenced McCully to the lowest amount of prison time within the applicable Guidelines range of 262 to 327 months. The court explained why it felt McCully fell within the various applicable provisions. There is no error here.

■ Juan Garcia challenges the denial of a two-level reduction for acceptance of responsibility, as he did state that he accepted responsibility in his objections to the presentence report. However, the district judge explained that he did not feel Garcia de-

served the reduction since he had not demonstrated sufficient remorse. "Whether a defendant has accepted responsibility for the criminal conduct [under the Guidelines] is a question of fact, and the district court's assessment of this is accorded great deference and is not to be disturbed unless clearly erroneous." *United States v. Williams*, 940 F.2d 176, 181 (6th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 666, 116 L.Ed.2d 757 (1991); *see also United States v. Chalkias*, 971 F.2d 1206, 1216 (6th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 351, 121 L.Ed.2d 265 (1992). The judge below stated that it is more difficult for a defendant to obtain the reduction if he puts the government through its burden of proof at trial, and this accords with U.S.S.G. § 3E1.1, comment. (n.2). *See Williams*, 940 F.2d at 182. We do not find that his determination here is clear error.

■ Both Juan and Arturo Garcia challenge the enhancement each received under § 3B1.1(a). Arturo Garcia argues that he does not deserve the four-level enhancement for being an "organizer or leader," but only a three-level enhancement for being a "manager or supervisor" under § 3B1.1(b). While the distinction between the two enhancements is not self-evident, the evidence in this case showed that Garcia recruited accomplices to the crime (the drivers), which is a determining factor mentioned in § 3B1.1, comment. (n.3). He also paid the drivers for their work and appears to have been the person in control when the cars arrived at his garage in Texas. Juan Garcia's argument is simply that Arturo Garcia was the leader. The evidence is that Juan Garcia negotiated the shipments with Briseno and charged him for the marijuana. Given the evidence, the district court did not commit clear error in giving both defendants the enhancements after finding "Juan Garcia as being the organizer-leader with regard to the Michigan connection, and Arturo Garcia being the organizer and the leader with regard to the drivers and the peons in Texas."

**B.**

■ Arturo Garcia brings one final challenge to his sentencing that deserves more

extensive discussion. The district court decided that Garcia intentionally misled the probation officer by not revealing a prior conviction for assault and by falsely denying his use of cocaine while on pretrial bond; consequently, the court enhanced his sentence by two levels, for obstruction of justice under U.S.S.G. § 3C1.1.

Section 3C1.1 of the Guidelines provides for a two-level enhancement when a defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." As "sentencing" was added as a potential object of an obstruction only in guideline amendments effective November 1, 1990, most § 3C1.1 case precedent involves the application of the enhancement to the obstruction of an investigation or prosecution. As this offense occurred mostly in 1991 and the sentences were rendered in November, 1992, the 1990 guideline amendments apply. *See United States v. Kussmaul,* 987 F.2d 345, 351–52 (6th Cir.1993).

In *United States v. Sanchez,* 928 F.2d 1450, 1458 (6th Cir.1991), we held that whether the conduct of the defendant constituted an obstruction of justice " 'turns primarily on the legal interpretation of a guideline term' and is thus reviewed *de novo*" (quoting *United States v. Stroud,* 893 F.2d 504, 507 (2d Cir.1990)). However, the question of whether conduct is material and willful under U.S.S.G. § 3C1.1 is arguably factual and may be subject to a clearly erroneous review. *See, e.g., United States v. Perry,* 991 F.2d 304, 311 (6th Cir.1993) ("We review an enhancement under the Guidelines for clear error."); *United States v. Williams,* 952 F.2d 1504, 1516 (6th Cir.1991) ("district court clearly erred in applying section 3C1.1"); *United States v. Belletiere,* 971 F.2d 961, 964 (3d Cir.1992) (willfulness), *United States v. Jordan,* 890 F.2d 968, 973 (7th Cir.1989) (materiality), *overruled on other grounds, United States v. Thompson,* 944 F.2d 1331, 1347–48 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1177, 117 L.Ed.2d 422 (1992). Nevertheless, in this case, no matter whether the district court's decision is reviewed under a *de novo* or clearly erroneous standard, we find that the district court did not err when it found that Arturo Garcia willfully and materially obstructed justice under § 3C1.1 for failing to admit his use of cocaine while on pretrial release.

When Garcia was interviewed by the probation officer about his use of cocaine, his lawyer was present. Although counsel stated that Garcia did not deny his use of drugs while on bond, we do not disturb the district court's finding to the contrary. Instead, we decide whether Garcia's denial amounts to a willful and material violation of § 3C1.1. There is authority in support of defendant's position that his failure to admit cocaine use pending trial is not an obstruction of justice under § 3C1.1. For instance, in *Belletiere,* 971 F.2d at 965–68, the Third Circuit held that a defendant's failure to admit that he used cocaine, when he tested positive for cocaine use while on bond awaiting sentence, did not justify an enhancement under § 3C1.1, inasmuch as the defendant had already been sanctioned by his bail revocation and the misrepresentation was not an attempt to obstruct the "instant offense." *Id.* at 967 (citing § 3C1.1). Additionally, in *Thompson,* 944 F.2d at 1347–48 (citing § 3C1.1, comment. (n.1)), the Seventh Circuit held that the denial of drug use while on bail is not an obstruction of justice. The commentary relied on by *Thompson* provides in part:

> This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision.

We think that the interpretations of § 3C1.1 in *Belletiere* and *Thompson* are too narrow. The "defendant's denial of guilt" in U.S.S.G. § 3C1.1, comment. (n.1) refers to a denial of guilt in the crimes charged or as to other pending offenses. In this case, the defendant was not charged with the use of cocaine while on bail. When Garcia was interviewed concerning his use of cocaine while on bail, his bond had already been

revoked because he had tested positive for cocaine in three urine tests. Moreover, he had the opportunity to refuse to answer the question or to have his attorney raise an objection during the sentencing interview. Instead, he denied the use of cocaine, and that constitutes an obstruction of justice during sentencing. *See United States v. Smaw*, 993 F.2d 902, 904 (D.C.Cir.1993) (criticizing *Belletiere* in finding § 3C1.1 applicable where the defendant failed to disclose a financial interest, which related to her ability to pay a fine or restitution). As *Smaw* stated, a material omission is one which is "relevant—not outcome determinative." *Id.* Here, likewise, Garcia's failure to admit his cocaine use was not outcome determinative, but was relevant to the choice of sentence within the guideline range. *See United States v. Dedeker*, 961 F.2d 164, 167 (11th Cir.1992).

In light of the foregoing analysis, we need not decide whether Garcia's failure to mention to the probation officer a prior assault conviction was a willful and material obstruction of justice.

**AFFIRMED.**

NATHANIEL R. JONES, Circuit Judge, concurring in part and dissenting in part.

I concur in the majority opinion except with respect to Section III–B, in which the majority upholds the two-level "obstruction of justice" enhancement that was given to Arturo Garcia. I believe that the government has not met its burden of showing that he made a false statement to a presentence official that was willful and material.

**I**

Arturo Garcia is a Spanish-speaking migrant farm worker who was educated in Mexico through only the sixth grade. In 1992, while on pretrial release in this case, he tested positive for cocaine three times, on March 11, March 24, and June 9. He appeared before a federal judge in the Western District of Michigan on July 15, and on July 16 the judge issued an Order of Detention revoking Garcia's bond for "knowingly having used cocaine which is a violation of the condition of bond that prohibits usage of a controlled substance." J.A. at 574.

Two months later, a sentencing officer interviewed Garcia. Since the officer spoke English and Garcia spoke Spanish, the lengthy interview occurred through a translator. At sentencing, the officer produced her notes of the interview, which included one line regarding Garcia's drug use, which the court examined:

THE COURT: Well, I am having trouble with your handwriting a little bit. "Denies ever using" slash, looks like *experimenting* or *experiment* "with drugs."

[THE OFFICER]: Yes.

J.A. at 476. This notation allegedly reflects the willful false statement by Garcia that he did not use cocaine while out on bond. Garcia denied that he made such a statement and denied that he was trying to be deceptive in the interview. His attorney vigorously challenged the assertion that Garcia disavowed the use of cocaine while on bond:

I was present at that interview, and I speak both English and Spanish; and I was at the hearing ... for the revocation of the bond, the detention hearing. I would have had to have been in a coma not to have realized when [the officer] said have you ever used drugs or cocaine, and he responds "no," and I am sitting there and listening and knowing that he was, ah, had tested positive on three occasions.

J.A. at 477.

There was no other evidence given regarding his statement. Since at the time of the interview it was so thoroughly established that Garcia had tested positive for cocaine and thereby been sanctioned, I do not think we can justly find that the government has met its burden of proof in showing that he willfully denied using the drug while on pretrial release. Had Garcia willfully denied using cocaine during this time, one would expect at least some sort of further discussion or explanation at the interview as to his statement's conflict with the recent probation revocation. No one asserts that such a discussion transpired. Thus, an very likely explanation for what led to the probation officer's ambiguous note is that a miscommunication took place because the interview oc-

curred through translation; perhaps the question was unclear as to what types of drugs the officer meant, what time period his question referred to, or precisely what the term "experimenting" meant in translation. The note appears to indicate that the officer asked some general question dealing with drug use, not that she referred to "cocaine" or "pretrial release" specifically.

Application Note 1 to § 3C1.1 instructs courts that "statements should be evaluated in a light most favorable to the defendant." Under this standard, I do not believe that enough evidence exists to properly support a specific determination that Garcia willfully denied cocaine use while on bond. I find it disturbing that Garcia has been punished with what could amount to as much as 2½ years of additional prison time due to what was so very likely a miscommunication resulting from a language barrier.

## II

Even assuming the government has shown that Garcia willfully told the sentencing officer "I did not use cocaine during my pretrial release," such a false statement is simply not material to his sentencing. We previously have reversed § 3C1.1 enhancements based upon false statements that did not materially affect investigations and prosecutions. In *United States v. Williams,* 952 F.2d 1504, 1514–16 (6th Cir.1991), the defendant told FBI investigators several whopping lies, but he did so after the FBI's investigation was almost complete. The panel held that the lies could not have obstructed the investigation, for they "fooled no one." *Id.* at 1516. *Williams* thus applies an objective test for materiality, in which the court must ask whether the lie obstructed or could have obstructed justice, rather than a subjective test, in which the court might ask whether the defendant intended to materially obstruct justice. *See also, e.g., United States v. Perry,* 991 F.2d 304, 312 (6th Cir.1993) (hurried and unsuccessful attempt to conceal evidence is not a material obstruction of justice); *United States v. Fiala,* 929 F.2d 285, 289–90 (7th Cir.1991) (false statement that caused officials 1½-hour delay did not materially obstruct justice).

As in *Williams,* Garcia's statement fooled no one. The record showed that he tested positive for cocaine three times, and the order determining that he had done so was the law of the case. *Cf. United States v. Gardiner,* 955 F.2d 1492, 1499 (11th Cir.1992) (defendant's statement to the probation officer that he knew nothing about the cocaine at issue was not material because the jury already had found otherwise).

Even if the court somehow would have believed Garcia's false statement, that fact could not have influenced his total offense level. This is because the sentencing guidelines provide no enhancements for persons who are using drugs, and Garcia had already been punished for doing so by having his bond revoked. Furthermore, the court found Garcia had accepted responsibility for his offense despite his drug use while on bond.

Though it acknowledges that Garcia's denial "was not outcome determinative," the majority finds it material because it was "relevant to the choice of sentence within the guideline range." This argument eviscerates the materiality requirement, for the district court has complete discretion to select a sentence within the guideline range and thus may consider any information about the defendant, no matter how trivial, in doing so. The argument also contradicts *Williams* and other cases in which the circuit courts have found statements to be immaterial even though the district court might have considered the information in choosing within the range. In my view, as the Guidelines instruct us to evaluate statements in a light most favorable to the defendant, U.S.S.G. § 3C1.1, comment. (n.1), when a statement is not material to the determination of the sentencing level, we must not find it material for the reason that it might have affected the district court's discretion within the level unless we have good reason to think the statement "would tend to influence or affect" that choice. *Id.* at n. 5. I would thus consider the statement material to the district court's choice of sentence within the applicable range if the district court had stated that was the case. Here, the district court stated no reason whatsoever why the statement was material. *See* J.A. at 480–81; *cf. also United States v. Cox,* 985 F.2d 427, 431–32 (8th Cir.1993) (enhancement reversed in part because the government gave the district court no reason why the defendant's statement was

material). Garcia simply was sentenced in the middle of the applicable guideline range, and there is no reason to assume that the court would have given him a lighter sentence if it would have believed he did not use cocaine on pretrial release.

Finally, it appears that the majority's finding that "Garcia's failure to admit his cocaine use" was relevant erroneously focuses not on whether Garcia made a false statement that materially obstructs justice, but simply upon the *fact* that he made a false statement. In choosing a sentence within the applicable range, the district court may, if it wishes, consider the fact that the defendant told an immaterial lie. However, that possibility cannot make the lie a material false statement for purpose of applying the obstruction of justice enhancement, or the materiality requirement would be completely meaningless.

### III

I would vacate Arturo Garcia's sentence and remand for resentencing without the obstruction of justice enhancement, and therefore I respectfully dissent from section III–B of today's opinion.