**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Douglas LIDDELL, Eddie Isom, Clarence Aric Thompson, Ruby Liddell,**
**Defendants–Appellants.**

Nos. 01–2310, 01–2361, 01–2375, 01–2410.

United States Court of Appeals,
Sixth Circuit.

May 22, 2003.

Before RYAN, BATCHELDER and LAY,* Circuit Judges.

---

* The Honorable Donald P. Lay, Circuit Judge for the United States Court of Appeals, Eighth Circuit, sitting by designation.

## I.

PER CURIAM.

This is a criminal appeal from a consolidated jury trial.[1] Douglas Liddell, Ruby Liddell (a.k.a. Rudy Liddell), Clarence Thompson, and Eddie Isom (collectively the "Defendants") were indicted on one count of conspiracy to distribute controlled substances and several other drug and gun violations. All four were found guilty of the conspiracy count with special verdicts indicating the drug and quantity ranges for each Defendant. In addition, three of the four Defendants were found guilty of one or more additional counts. The Defendants now appeal their convictions along with the district court's application of the United States Sentencing Guidelines. We affirm the district court in all respects.

## II.

Rudy Liddell and Derrick Peterson began selling drugs in Saginaw, Michigan in 1990. Peterson moved to Detroit in 1993 and began buying larger quantities of cocaine to sell in Saginaw. Liddell made frequent trips to help deliver this cocaine. Eventually, the distribution business grew and diversified, involving multiple people in the sale of heroin, cocaine base, marijuana, and powder cocaine.

The conspiracy was eventually apprehended after investigators intercepted calls between a paid informant, Rudy Liddell, and Liddell's supplier. The investigators attempted a controlled sale of forty-seven kilograms of cocaine between the informant and Liddell. The sale fell through when the agents refused to give Liddell a sample of their cocaine. In the meantime, officers also made controlled purchases with Isom, Thompson, and multiple other co-defendants.[2]

Officers executed search warrants at six different residences in December 1998. Police seized drugs, scales, paraphernalia, and loaded firearms. Defendant Thompson also reportedly made several admissions to investigators during one of these searches. The Defendants were tried and convicted in March 2001. They now appeal with separate assertions of error.

## III.

### A. *Apprendi v. New Jersey*

Thompson and Douglas Liddell allege that their sentences violated their due process rights because the district court sentenced them using drug quantities which were not specifically found by their jury. *See Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In each Defendant's case, the jury issued a special verdict form which specified the quantities of drugs for which it found each Defendant responsible.

The *Apprendi* arguments made by these Defendants have no merit. Due process is only violated when a sentence is imposed which is beyond the allowed statutory maximum for the convicted crime. *Apprendi*, 530 U.S. at 494–95, 120 S.Ct. 2348. The statutory maximum for each of these Defendants was twenty years imprisonment. *See* 21 U.S.C. § 841(b)(1)(C). Thompson received a sentence of sixteen years, three months, and Liddell received a sentence of ten years, one month. As

1. United States District Court for the Eastern District of Michigan, the Honorable Victoria A. Roberts, United States District Judge, and the Honorable David M. Lawson, United States District Judge, presiding.

2. A total of twenty-two people were indicted for their involvement in the conspiracy. This jury was only asked to convict six of these Defendants. The others either pled guilty or were tried separately.

such, the district court did not violate the Defendants' due process rights.

## B. Standard of Proof

Douglas Liddell argues that the district court erred in applying a preponderance of the evidence standard at sentencing. He urges that because the court's factual determinations exposed him to a sentence twice as long as the sentence "authorized" by the jury, the court should have applied a higher standard of proof.[3]

■ Under *McMillan v. Pennsylvania,* 477 U.S. 79, 91–92, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). sentencing factors need to be established by a preponderance of the evidence. The adoption of federal sentencing guidelines does not change this approach. *United States v. Zajac,* 62 F.3d 145, 148 (6th Cir.1995). Liddell points to no mandatory legal authority for his argument.[4] As such, *McMillan* is controlling and must be followed. *McMillan* requires that evidence used for sentencing be found only by a preponderance of the evidence. This is the standard the district court used. Accordingly, we affirm.

## C. Drug Quantity

Douglas Liddell's last assertion of error is that there was not enough evidence under the preponderance of the evidence standard to assess him with 977 kilograms of marijuana equivalent. He urges that the district court committed clear error in relying only on unreliable witness testimony to satisfy the burden of proof.

■ The district court may rely on any competent evidence in the record. Physical evidence is not required. *United States v. Pruitt,* 156 F.3d 638, 647 (6th Cir.1998). Furthermore, we must defer to the district court's determinations unless there is no foundation for them. *United States v. Owusu,* 199 F.3d 329, 339 (6th Cir.2000) (citing *Pruitt,* 156 F.3d at 647). The district court in this case specifically found the witnesses in question credible. The fact that such witnesses were uncorroborated drug users who testified pursuant to plea agreements does not automatically make their testimony not credible. There is no additional evidence before this court that the findings of the district court as to these witnesses' credibility were clearly erroneous. Accordingly, we affirm the district court's findings.

---

**3.** The jury found Liddell responsible for less than 100 grams of heroin, which would have put him in a sentencing range of 63–78 months. At sentencing, the court found him responsible for 977 kilograms of marijuana equivalent, which placed him in a sentencing range of 121–151 months.

**4.** Liddell argues, however, that *McMillan* also stands for the proposition that if a sentencing hearing is "a tail which wags the dog of the substantive offense," then its holding should not be seen to allow an increase in the entire range of penalties which the sentencing judge may utilize. *See McMillan,* 477 U.S. at 88, 106 S.Ct. 2411. Liddell asserts that this holding should apply not just to cases that exceed the statutory maximum but also to those that shift the original guideline range to a higher range.

Liddell cites a Third Circuit case as an example of where a court required a higher standard of proof when a defendant's sentence was significantly higher than the sentence originally authorized by the jury. *See United States v. Kikumura,* 918 F.2d 1084 (3d Cir.1990). In *Kikumura,* the defendant was assessed an upward departure of 330 months based upon the sentencing factor of promotion of terrorism. The Third Circuit wrote "[where] the magnitude of a contemplated departure is sufficiently great that the sentencing hearing can fairly be characterized as 'a tail which wags the dog of the substantive offense,' " a district court's factual findings regarding a sentencing enhancement must satisfy a higher standard of proof than mere preponderance of the evidence. *Kikumura,* 918 F.2d at 1100–01 (quoting *McMillan,* 477 U.S. at 88, 106 S.Ct. 2411).

Douglas Liddell also alleges that he cannot be held responsible for an attempted transfer of heroin between Defendant Rudy Liddell and one Martin Buchanan. Again, this argument is no more than a challenge to the district court's credibility findings. As such, we review for clear error. *United States v. Hoskins*, 173 F.3d 351, 354 (6th Cir.1999). We find no clear error in the district court's finding. The district court found that this transaction was a part of the conspiracy at the time Douglas Liddell was involved and that the transaction was reasonably foreseeable.[5] This is sufficient to attribute the transaction to Liddell under the conspiracy charge. We thus affirm the judgment of the district court.[6]

### D. The Jury

#### 1. Excusals for Cause

■ Defendant Eddie Isom alleges that two potential jurors should have been excused for cause. Under *United States v. Martinez–Salazar*, 528 U.S. 304, 307, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000), no rule-based or constitutional right is violated if a defendant exercised a peremptory challenge against a potential juror he was unable to dismiss for cause, so long as no biased juror remained on the panel. The Defendants used their peremptory challenges to remove the potential jurors in question. As such, *Martinez–Salazar* is dispositive and this court does not need to further review the district court's ruling on dismissal for cause.

#### 2. Batson Challenges

■ Defendants Eddie Isom and Rudy Liddell allege that the Government violated *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) when it dismissed two potential jurors who were African–American.[7] The Defendants made a prima facie case under *Batson* (the Government does not deny this). However, the Government met its burden by offering race-neutral reasons for each potential juror's dismissal.[8] The Government is not required to articulate a reason which would be adequate enough for a challenge

---

**5.** To attribute this specific 100 grams of heroin to Liddell, the district court should have asked whether the transaction was (1) foreseeable to Douglas Liddell, and (2) within the scope or furtherance of the criminal activity he had agreed to undertake. At sentencing the district court found the 100 gram transaction was "foreseeable" but made no finding as to whether it was within the scope or furtherance of the criminal activity that was the subject of the conspiracy. However, assuming this was error, it was harmless error. This is so because the extra 100 grams of heroin attributed to Douglas from the Rudy Liddell/Martin Buchanan transaction raised the amount of marijuana equivalent attributed to Douglas from 777 kilograms to 877 kilograms. This did not alter the sentencing range to which Douglas was exposed because the same range applies to any quantity between 700 kilograms of marijuana equivalent and 1,000 kilograms.

**6.** At oral argument, counsel stressed that the district court had mistakenly attributed an additional 100 kilograms of marijuana equivalent to Douglas Liddell. This was a separate finding from the Buchanan transaction. Ultimately, as with the additional 100 kilograms from the Buchanan transaction, any error was harmless since the increase from 877 kilograms to 977 kilograms did not change the sentencing range to which Liddell was exposed.

**7.** There were no African–Americans on the jury and there were only three African–Americans total in the venire.

**8.** One of the potential jurors was a recent divorce client of the one of the defense attorneys. The other confessed that she had two close friends who had been prosecuted and sentenced some years earlier. These previous cases had been prosecuted by the Assistant United States Attorney assigned to the case at bar.

for cause. *Id.* at 97, 106 S.Ct. 1712. The reason must simply be race-neutral. Accordingly, the findings of the district court on the Defendants' *Batson* challenges are affirmed.

### E. Expert Testimony

■ At trial, the Government admitted into evidence an English translation of the transcripts of several Spanish language phone calls. Officer Jesse Diaz, an investigator on the case, testified as an expert as to the accuracy of the translations. Officer Diaz is a native Spanish speaker.

Defendants Eddie Isom and Rudy Liddell allege that it was an abuse of the district court's discretion to admit these transcripts. They argue that a jury could easily be confused by the dual role of both fact and expert witness presented by Officer Diaz. We have recognized that this situation involves significant risk but have not adopted a per se rule against allowing officers to testify as both a fact and expert witness. *See United States v. Tocco,* 200 F.3d 401, 418 (6th Cir.2000); *United States v. Thomas,* 74 F.3d 676, 680–81 (6th Cir. 1996). We decline to do so today.

This court has found that there can be no abuse of discretion in this type of situation when the Defendants involved did not point to any specific inaccuracy in the translation or offer any alternative translation. *United States v. Garcia,* 20 F.3d 670, 673 (6th Cir.1994). The Defendants at bar never offered an alternate version of the transcripts or pointed out any inaccuracy in their translation. Accordingly, we find the district court did not abuse its discretion in admitting the translations or the expert testimony of Officer Diaz.

### F. The Testimony of Derrick Peterson

■ Defendants Eddie Isom and Rudy Liddell contest the district court's decision not to declare a mistrial or strike the testimony of Government witness Derrick Peterson. The Defendants argue that the Government's acts in putting Peterson on the stand and not correcting his testimony constituted the presentation of known false evidence and required a mistrial under *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

The fact that a witness once perjured himself does not mean he will perjure again. Peterson was extensively impeached with his grand jury testimony and his prior statements to police. Although he did not outright admit his perjury at that time, he did admit to holding back during prior testimony.

Defense counsel was notified of the Government's knowledge of Peterson's false testimony prior to trial. The Government, therefore, met its obligations under *Brady.* *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). There is no evidence that Peterson perjured himself during his trial testimony. Furthermore, he was fully cross-examined and impeached. As such, we can find no evidence of an abuse of discretion by the district court. *See United States v. Levy,* 904 F.2d 1026, 1030 (6th Cir.1990) (noting that a district court's denial of a motion for mistrial is reviewed for abuse of discretion).

### G. Thompson's Heroin Conviction

■ Defendant Thompson argues there was insufficient evidence to support a verdict that he had possessed heroin with an intent to distribute. Thompson admitted that he dealt "mostly" in cocaine and marijuana but had accompanied other conspirators on two occasions to pick up or deliver heroin. This statement constitutes an admission that part of Thompson's business was in heroin, or at the very least, that he was aware of the other conspirators' involvement in heroin. Such an admission is

**964**

sufficient in this circumstance to support the jury's finding that Thompson's role in the conspiracy involved heroin. As such, Thompson's conviction is affirmed.

### H.  Thompson's Minor Role Adjustment

■ Thompson's last assertion of error is that the district court should have granted him an adjustment under the United States Sentencing Guidelines for a minor role in the conspiracy. We review a district court's findings of fact under the Sentencing Guidelines for clear error and its conclusions of law *de novo*. *United States v. Rutana*, 18 F.3d 363, 365 (6th Cir.1994).

A defendant is entitled to an adjustment for his minor role in the offense if he is less culpable than most of the other participants, but his role could not be described as minimal. U.S.S.G. § 3B1.2, cmt. n. 3. Thompson does not meet this standard. While his conduct may have been less culpable than the other Defendants, this does not say much about his overall culpability. Under our precedent, the defendant has the burden of proving that he was "*substantially* less culpable than the average participant." *Owusu*, 199 F.3d at 337 (emphasis added) (citation omitted). The district court was not bound by the jury's findings on this matter. Notably, this jury did not make specific findings as to many other members of the conspiracy who were not before it. Further, while this jury did not find either Douglas Liddell or Eddie Isom responsible for any powder or crack cocaine, it found Thompson responsible for quantities of all four controlled substances. This distinction alone demonstrates that it is not obvious that Thompson was "substantially less culpable" than the other conspirators, and thus we cannot find clear error on the part of the district court in denying him a minor role adjustment. As such, the sentencing of the district court is affirmed.

### I.  The Admission of Grand Jury Testimony

■ Finally, Rudy Liddell argues it was reversible error for the district court to admit the grand jury testimony of Fred Gilmer into evidence. The court admitted the testimony as a non-hearsay prior consistent statement under Fed.R.Evid. 801(d)(1). This decision is reviewed for plain error. *United States v. Toney*, 161 F.3d 404, 408 (6th Cir.1998).

Gilmer testified at trial that he obtained heroin by contacting Rudy Liddell and telling him he was "sick." Following these phone calls, a young man would arrive with heroin for sale. On the stand, Gilmer testified that he was unaware of the connection between Liddell and the heroin. In response, the Government presented Gilmer's conflicting grand jury testimony where he specifically stated he had bought heroin from Liddell on several occasions. According to the trial transcript, the court admitted this evidence as a prior *consistent* statement.

Liddell argues that this testimony is actually a prior *inconsistent* statement because it conflicts directly with Gilmer's in-court statements. As such, he asserts it should not have been admitted as a non-hearsay *consistent* statement. Since Gilmer was one of few witnesses who testified to Liddell's involvement with heroin, Liddell asserts that his testimony was crucial on this point and it was more than harmless error for the court to admit this evidence.

We hold it was not plain error for the district court to admit the statement. The district court apparently recognized the testimony as a prior *inconsistent* statement and admitted the evidence despite an incomplete explanation for why such testimony was not hearsay. Additionally, in making an argument for admission of the

testimony, the prosecutor specifically cited Rule 801(d)(1)(A), which deals with *inconsistent* statements, and not (B), which deals with consistent statements.

The evidence was admissible as a prior inconsistent statement. As such, it was not hearsay. In this case, the semantics involved make any error by the district court harmless. Accordingly, we affirm.

## IV.

We have reviewed all of the Defendants' assertions of error in detail. We find no error on the part of the district court. The judgment of the district court is thereby AFFIRMED.

