**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 6, 2013
Decided March 28, 2013

**Before**

DANIEL A. MANION, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

| | |
|---|---|
| No. 12-1998 | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | |
| | No. 10 CR 913-3 |
| *v.* | |
| | Charles R. Norgle, |
| RADE MANOJLOVIC, *Defendant-Appellant*. | *Judge.* |

**O R D E R**

A jury convicted Rade Manojlovic of wire fraud for using straw buyers to obtain home loans. At sentencing the district court calculated a total guidelines offense level of 21, which included two levels for obstructing justice. *See* U.S.S.G. § 3C1.1. The court applied this enhancement because Manojlovic concealed assets from the probation officer who prepared the presentence report. Manojlovic argues that his nondisclosure was immaterial and not willful. We reject these arguments and affirm. Truthful information about a defendant's financial situation is material at sentencing because it has a tendency to influence whether a fine is imposed and how restitution is structured. And the district court did not clearly err in finding that Manojlovic willfully concealed his assets.

## I. Background

Manojlovic turned to mortgage fraud in 2005 when he could no longer afford the mortgage on his own house. Assisted by his friend and codefendant, Nicholas Kangadis, he recruited a straw buyer to apply for a home loan that would pay off his outstanding balance and also net him a profit. The straw buyer reported a grossly inflated income on her loan application and falsely attested that she would reside in the house she was purchasing; in reality the house was Manojlovic's, he continued to live there, and he pocketed more than $120,000 when the straw buyer's loan came through. A year later, using a different straw buyer, Manojlovic did the same thing all over again, but when the new mortgage went unpaid, the house entered foreclosure. Manojlovic then filed a forged quitclaim deed in an unsuccessful attempt to regain ownership of the house.

A jury found Manojlovic guilty of two counts of wire fraud, *see* 18 U.S.C. § 1343, and a probation officer met with him to collect information for the presentence report. Manojlovic submitted a net worth statement during this meeting in which he attested to having assets totaling no more than $25. In fact, he deposited a $25,000 check into one of his bank accounts on the same day that he met with the probation officer. The government learned of the deposit weeks later—but before Manojlovic's sentencing—and informed his lawyer and the probation officer. Only then did Manojlovic admit to having received the money. He claimed that it was repayment for a loan he had made—to someone whose name he could not remember—and that he had spent it on legal fees and living expenses almost as soon as he received it.

At sentencing the prosecutor argued that the offense level should be increased by two levels for obstruction of justice based on Manojlovic's false net worth statement. The obstruction adjustment applies when the defendant has "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to . . . sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. Providing false information to a probation officer in connection with a presentence investigation constitutes obstruction (or attempted obstruction) only if the information provided is "materially false," *see id.* cmt. n.4(H). Manojlovic argued that his failure to disclose the $25,000 was neither "willful" nor "material." He said he had simply forgotten about the money and stressed that his possession of the money was very brief.

The district court applied the § 3C1.1 adjustment, explaining that Manojlovic's willfulness was evident from the timing of the deposit and that the materiality requirement was satisfied because a defendant's finances are relevant to "the payment of a fine, restitution, costs, or any related expenses." The judge then sentenced Manojlovic to 37 months' imprisonment (the bottom of the guidelines range) and 2 years' supervised release.

In addition, the judge ordered Manojlovic to pay $259,000 in mandatory restitution, but chose not to impose a fine. The judge also explained that Manojlovic would be unable to pay the costs of supervised release or to make restitution payments until the commencement of his supervised release.

## II. Analysis

On appeal Manojlovic again argues that the misinformation he provided in his net worth statement was immaterial. It is well settled that a defendant's concealment of assets from a probation officer can support an obstruction adjustment under § 3C1.1 because his financial situation is relevant to his ability to pay fines or restitution. *See United States v. Ramunno*, 133 F.3d 476, 481–82 (7th Cir. 1998); *United States v. Gabel*, 85 F.3d 1217, 1221–22 (7th Cir. 1996); *United States v. Miller*, 607 F.3d 144, 150–51 (5th Cir. 2010); *United States v. King*, 559 F.3d 810, 815 (8th Cir. 2009); *United States v. Hernandez-Ramirez*, 254 F.3d 841, 843–44 (9th Cir. 2001); *United States v. Romer*, 148 F.3d 359, 372 (4th Cir. 1998); *United States v. Ballard*, 16 F.3d 1110, 1112–13 (10th Cir. 1994); *United States v. Smaw*, 993 F.2d 902, 904 (D.C. Cir. 1993)*; United States v. Cusumano*, 943 F.2d 305, 316 (3d Cir. 1991). Manojlovic contends that his failure to disclose the $25,000 deposit was immaterial because the district court never said that this information about his assets actually influenced the restitution order.

This argument misunderstands the materiality requirement in § 3C1.1. The concealed information need only "*tend* to influence or affect the issue under determination" in order to be material. U.S.S.G. § 3C1.1 cmt. n.6 (emphasis added). The obstruction adjustment may be applied to a defendant who conceals assets even if the defendant's assets do not ultimately influence his sentence. *See Miller*, 607 F.3d at 151; *Hernandez-Ramirez*, 254 F.3d at 843–44; *Smaw*, 993 F.2d at 904; *see also United States v. Bedolla-Zavala*, 611 F.3d 392, 396 (7th Cir. 2010) ("The relevant considerations are the kind of information provided and its tendency to influence the court, not the actual effect of a particular misstatement.").

The cases Manojlovic cites in his brief—*United States v. Partee*, 301 F.3d 576 (7th Cir. 2002), and *United States v. Thomas*, 11 F.3d 1392 (7th Cir. 1993)—in no way foreclose the application of § 3C1.1 in this case. Those cases approve of applying § 3C1.1 to defendants who misled a probation officer about something other than a bank account balance. Neither case suggests that a defendant's lying about his assets cannot merit an obstruction adjustment, and neither case stands for the proposition that a falsehood is material only when it *actually* influences a sentencing decision. To the contrary, the defendant in *Thomas* argued, as Manojlovic does here, that the information he tried to conceal (his age) was

immaterial because it did not actually affect his sentence. We explained that truthful information about the defendant's age was relevant to the probation officer's investigation of an earlier arrest and concluded that the defendant's "conduct is not mitigated by the fact that the district court ultimately did not consider the prior arrest in imposing sentence." *See Thomas*, 11 F.3d at 1401.

Manojlovic also contends that he did not willfully conceal the $25,000 from his probation officer. Whether a defendant acted willfully for § 3C1.1 purposes is a factual determination, so our review is for clear error. *United States v. Carroll*, 346 F.3d 744, 748 (7th Cir. 2003). The district court's finding is not clearly erroneous. Manojlovic deposited the $25,000 on the very day he met with the probation officer and submitted the false net worth statement. And Manojlovic's decision to come clean after the government discovered the deposit makes no difference. Like the defendant in *Thomas*, he apparently "did not intend to provide the correct information until he learned that he could be penalized for providing the false information." 11 F.3d at 1400.

**AFFIRMED**.